In the Matter of the ESTATE of Artha MEHUS, Deceased.

Gunder MEHUS, Appellant,

v.

George Arthur MEHUS, Raymo Mehus, Morris Mehus, Amy Mehus Thompson, Evelyn Mehus Holdahl, Hazel Mehus Satrom, Nina Mehus Thompson, and First Bank of North Dakota—Grand Forks, formerly known as Red River National Bank and Trust Company, Personal Representatives of the Estate of Artha Mehus, Appellees.

Civ. No. 9436–A.

Supreme Court of North Dakota.

April 24, 1979.

Shaft, McConn, Fisher & Thune, Grand Forks, for appellant; argued by Gary R. Thune, Grand Forks.

Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for appellee Nina Mehus Thompson.

John T. Paulson, Valley City, for appellee George Arthur Mehus.

S. Lee Vinje, Mayville, for appellee Raymo Mehus.

A. Roger Kringlie, Northwood, for appellee personal representatives; argued by A. Roger Kringlie, Northwood.

SAND, Justice.

Gunder Mehus appealed from a judgment entered in district court affirming an order of the county probate court declaring two savings certificates, held in joint tenancy with the right of survivorship in the names of Gunder and his deceased mother, Artha Mehus, and which were created while Gunder was acting as co-attorney-in-fact for his mother, were the sole property of his mother's estate. The district court reached its conclusion on the ground that Gunder failed to "overcome the presumption of misrepresentation, concealment, threat, or adverse pressure of any kind" of his part in the creation of the certificates while serving as a fiduciary.

Artha Mehus was the mother of Gunder and the seven other Mehus brothers and sisters named as appellees in this case. In an earlier opinion of this court concerning the estate of Artha Mehus, we noted she was an extremely diligent, capable woman, with excellent business sense and judgment who amassed considerable property during her lifetime. *Mehus v. Thompson*, 266 N.W.2d 920 (N.D.1978). We also noted that by 1968, Artha's health restricted her to her home and largely confined her to bed. During the bedridden months prior to her death in 1970, Artha was cared for primarily by Gunder and two of his sisters, Nina Thompson and Evelyn Holdahl. Although Artha was bedridden during the latter years of her life, no issue has been raised in this case as to her mental capacity to contract or appoint an agent.

In 1966, Artha appointed her daughter, Nina Thompson, as her attorney-in-fact. While Nina was serving as attorney-in-fact, her mother signed a blank deed to which she attached the description of a 260 acre tract of real property. She directed Nina to have the deed completed and recorded naming Nina as the grantee.[1] This transfer of

1. The validity of the gift to Nina Thompson was upheld by this court in *Mehus v. Thompson*, 266 N.W.2d 920 (N.D.1978). On the authority of *Johnson v. Johnson*, 85 N.W.2d 211 (N.D. 1957), we recognized a burden of proof upon the grantee, because of her confidential relationship with the grantor, to prove no fraud or undue influence existed to warrant cancellation of the grant. In affirming the trial court we stated:

"We agree with the trial court that there is no evidence of undue influence. We must therefore conclude, with the trial court, that Artha Mehus was not subjected to undue influence. See, *Kadrmas v. Kadrmas*, 264 N.W.2d 892 (N.D.1978)."

Gunder argued that if we affirm the district court in this case, we must overturn our prior decision in *Mehus v. Thompson, supra*. We disagree.

We noted in *Mehus v. Thompson, supra* at 923, n. 1, that the trial of that case was conducted prior to the effective date of the North Dakota Rules of Evidence—February 15, 1977. Consequently, the effect of a presumption in that case was governed by evidentiary standards as they existed in this State prior to the adoption of our new Rules.

Prior to the effective date of the North Dakota Rules of Evidence, some North Dakota case law had interpreted the effect of a presumption as simply imposing upon the opponent of the presumption a burden of going forward with evidence to rebut the presumption; once this was done, the presumption disappeared. This formerly adopted theory is explained in the comments to our present rules:

property to Nina was one of several gifts made by Artha to her children between the years 1967 and 1969, a period during which Artha made outright gifts of cash and real property to her seven children in excess of $300,000 and varying in amounts from a total value of $86,765 given to Nina Thompson to a total value given to Raymo Mehus of $19,640.

In February 1969, Artha revoked the power of attorney given to Nina Thompson and appointed her sons Gunder and Morris as her co-attorneys-in-fact. In addition to the power to endorse and deposit checks and to draw checks on her account for the payment of taxes, farm-related expenses, and living and medical expenses, the document appointing Gunder and Morris provided them with the power to conduct Artha's agricultural business affairs, including the power to execute leases and contracts.

The first of the two savings certificates in issue in this case was purchased with a check dated 9 July 1969 payable to "Midwest Federal" in the amount of $5,000 and signed by Artha. Gunder testified his mother gave him this check and told him to purchase a joint savings certificate in their names from the Robbinsdale, Minnesota, office of Midwest Federal Savings and Loan Association. The certificates had been advertised in a Minneapolis paper and Gunder

clipped the application form from the paper and sent it and the check to Midwest. A signature card on this certificate was sent to Artha and Gunder by Midwest Federal, signed by both parties, and returned. The savings certificate was in the possession of Artha Mehus at the time of her death.

On 28 July 1969 a joint savings certificate was also purchased in the name of Artha Mehus and Evelyn Holdahl. This certificate is not in issue in this case.

The second savings certificate in question was purchased from Grand Forks Federal Savings & Loan Association in joint tenancy in the names of Artha and Gunder on 26 September 1969 in the amount of $10,000. The certificate was purchased with a check drawn on the account of Artha Mehus and signed by Gunder and Morris Mehus by power of attorney. A signature card on this certificate was also signed by Artha and Gunder. The funds from this certificate were subsequently withdrawn by Gunder and a new joint certificate was issued at a higher interest rate. This $10,000 certificate was in Artha's possession at the time of her death.

The interest from both certificates was paid to Artha during her lifetime.

Following Artha's death, the $10,000 certificate was reissued at the request of the

"If a presumption is said to impose a burden of going forward with evidence to rebut the presumption, the amount of evidence that must be introduced by the opponent to avoid a directed verdict against him is that amount which convinces the judge that reasonable jurors could find contrary to the presumption. Once this is accomplished, the presumption is of no force and the issue is decided on the probative force of the evidence itself. If the evidence is in even balance, then the party who had the burden of proof, originally, must lose, even though his case may have been initially aided by a presumption." Procedure Committee Notes, Rule 301, North Dakota Rules of Evidence.

The above-explained theory was espoused by this court on at least two occasions: *Fancher v. North Dakota Workmen's Compensation Bureau*, 123 N.W.2d 105 (N.D.1963); *Johnson v. Johnson*, 104 N.W.2d 8 (N.D.1960) and was obviously relied upon by this court in *Mehus v. Thompson, supra*.

In *Mehus v. Thompson, supra*, evidence of the absence of undue influence was presented in the form of Artha's handwritten description of the property on a slip of paper she gave to Nina for the direction of the attorney who was to complete the deed. The trial court apparently concluded such evidence sufficient to rebut the presumption and cause it to no longer have any effect. After the trial court reached that conclusion, the burden of proof returned to the other Mehus heirs to prove undue influence, which they failed to do.

Furthermore, in the instant case the statutory presumption of § 59–01–16, NDCC, was raised and argued, whereas in *Thompson, supra*, it was not.

The trial in this case was conducted subsequent to the effective date of the North Dakota Rules of Evidence and therefore the effect of a presumption and the burden of rebuttal, i. e., to overcome the presumption by credible evidence, were governed by the Rules. It was this burden of proof, as we will discuss *infra*, which Gunder Mehus failed to meet in this case.

administrator of Artha's estate in the names of Gunder and the administrator. The funds from this certificate were later withdrawn and deposited as an asset of the estate without the consent of Gunder.

Gunder filed a motion on 23 November 1976 requesting the $10,000 certificate be removed from Artha's estate. The appellees in this case opposed Gunder's motion and also placed in issue the $5,000 Midwest Federal certificate. The county probate court denied Gunder's motion and ordered both the $5,000 and $10,000 certificates be placed in Artha's estate. Gunder appealed from the order of the county probate court to the district court, which affirmed the county court's order. Gunder filed a notice of appeal from the judgment of the district court on 2 August 1978.

The issues raised in this case are:

(1) Did Gunder Mehus have the authority to purchase the savings certificate in joint tenancy with himself and Artha Mehus;

(2) Did Gunder present sufficient evidence to overcome a presumption of undue influence in the purchase of the joint savings certificates.

The district court in this case ruled that Gunder, as a fiduciary of Artha Mehus, had the burden of proving the transactions involving the savings certificates were not tinged with misrepresentation, concealment, threat, or adverse pressure of any kind, and that there is a presumption that the transactions were entered into under undue influence and without sufficient consideration. The court concluded Gunder had not overcome this presumption.

■ A power of attorney is an instrument in writing authorizing another to act as one's agent. The agent holding the power of attorney is termed an "attorney-in-fact" as distinguished from an attorney at law. *McLaren Gold Mines Co. v. Morton*, 124 Mont. 382, 224 P.2d 975, 979 (1950).

■ Because the power of attorney creates an agency relationship, the principles of the law of agency are applicable in determining the authority and duties of an attor-ney-in-fact. *Scott v. Hall*, 177 Or. 403, 163 P.2d 517 (1945); 2A C.J.S. *Agency* §§ 44, 150; 3 Am.Jur.2d *Agency* § 28. As summarized in 2A C.J.S. *Agency* § 150, although the powers of an attorney-in-fact are confined to those conferred upon him by the instrument:

"This does not, of course, mean that the authority of the person holding a power of attorney is to be determined finally and conclusively from the instrument, for a more extended, or an added, actual authority or a binding apparent authority may be given notwithstanding the instrument and independent of it. The purpose of written powers of attorney, or equivalent instruments in writing, is not to define the authority of the agent, as between himself and the principal, but to evidence such authority to others with whom the agent deals or may deal; but, even so, the existence of a written instrument has a tendency to establish the authority of the agent as being that which is therein contained, and none other."

■ The power of attorney given Gunder and Morris in this case was restricted in the authority it bestowed. It did not include a power to draw checks on Artha's account for all purposes or more specifically for the purpose of making gifts either to the attorneys-in-fact or to others. Nor did the power of attorney authorize the attorneys-in-fact to manage the private financial affairs of Artha. Consequently, if Gunder had the power to purchase the savings certificates in this case, that power was derived from a source other than the formal written power of attorney given him and Morris.

Section 3–01–06, North Dakota Century Code, provides authority may be conferred on an agent by either a prior authorization or a subsequent ratification. In this case we must necessarily determine if Gunder had the authority to both purchase the savings certificates and to make those purchases in joint tenancy with him as a joint tenant. We therefore examine the evidence to determine if there was an authorization or ratification of authority on both these questions.

As to the $5,000 savings certificate, Gunder testified its purchase was carried out at the specific request of Artha. Although such testimony might be construed as sufficient evidence of a prior authorization in Gunder to purchase the savings certificate, a more convincing indication of authority to create both certificates is shown by the ratification of the purchases by Artha.

In the law of agency, ratification is defined as:

" 'The affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.' " Restatement of Agency 2d § 82; *Askew v. Joachim Memorial Home*, 234 N.W.2d 226, 237 (N.D. 1975); *Gerhardt v. Fleck*, 256 N.W.2d 547, 555 (N.D.1977).

Ratification can be either express or implied by conduct of the principal which is inconsistent with an intention to repudiate the agent's action. *Askew v. Joachim Memorial Home, supra* at 237; *Gerhardt v. Fleck, supra* at 555. Thus, if the principal accepts and retains the benefits of an act with notice thereof, he may be deemed to have ratified it. § 3–01–08, NDCC; *Gribble v. Columbus Brewing Co.*, 100 Cal. 67, 34 P. 527 (1893); 3 Cal.Jur.3d *Agency* § 79. Also, when an agent is authorized to do an act but exceeds his authority and the rights of third persons are involved, the principal has a duty to repudiate the act as soon as he is fully informed of what has been done in his name or else he may be deemed to have ratified it by implication. *Gates v. Bank of America National Trust & Savings Association*, 120 Cal.App.2d 571, 261 P.2d 545, 548 (1953); 3 Cal.Jur.3d *Agency* § 80.

Although a distinction is made when applying the rule that silence is acquiescence between those cases in which only the principal and agent are involved and those in which third parties may be injured by the principal's failure to disavow, silence in most instances is evidence of an intent to ratify.

The prior relationship of the principal and agent should also be considered in the determination of a ratification. The retention of an agent after a principal has received knowledge the agent has exceeded his authority is never sufficient by itself to establish ratification, however, such retention also evidences an intent to ratify. *Shoopman v. Pacific Greyhound Lines*, 169 Cal.App.2d 848, 338 P.2d 3 (1959).

In this case Artha received the interest payments from the two savings certificates. It is debatable whether the retention of benefits from the certificates constituted ratification of the purchase of the certificates in joint tenancy, or simply a ratification of the purchase of savings certificates; there is, however, further evidence relating to the ratification of authority to purchase in joint tenancy found in the testimony of Morris Mehus. The following is taken from the direct examination of Morris by Mr. Thune:

"Q. When Gunder advised you that this $10,000 had been placed in the joint tenancy account No. 13789, did you inquire about it with your mother?

"A. Yes, I asked her how we should handle it and she said she didn't know.

"Q. You advised her it was in joint tenancy with Gunder's name on it?

"A. Yes.

"Q. And you asked her what she wanted to do about it and she said she didn't know?

"A. For income tax purposes I asked and she said she didn't know.

"Q. She didn't know what to do with it for income tax purposes?

"A. Right."

Although Artha expressed confusion over the proper manner of treating the creation of the joint tenancy for income tax purposes, Morris' testimony as to the conversation with his mother indicates she was aware the certificate was purchased as a joint tenancy, and yet with this knowledge, there is no evidence of a desire or a request on the part of Artha that the certificate be

changed. If Artha had wanted such a change, it is reasonable to assume she would have requested the same be made by her son who was acting as a co-attorney-in-fact, however, in the further testimony of Morris appears the following exchange:

"Q. [By Mr. Thune] Mr. Mehus, prior to your mother's death, did you commence any proceedings to have the certificate of deposit overturned?

"A. I can't say we did.

"Q. During the time that you acted under a power of attorney, did you follow your mother's instructions?

"A. As much as possible, yes."

The above testimony indicates Artha was aware the $10,000 savings certificate was purchased in joint tenancy with Gunder. In addition, we also note the signature cards for both certificates bear the signatures and typewritten names of Artha and Gunder. Although there was some question whether the names on the Grand Forks Federal certificate were typed in before or after the card was signed, the signatures are evidence of an awareness the certificates were held in joint tenancy as well as an intent to ratify. Artha's failure to repudiate the certificates, as well as her retention of Gunder as an attorney-in-fact after her awareness of the purchases, are also indications of ratification on her part. It appears that the combination of these considerations demonstrate a ratification on the part of Artha regarding Gunder's authority to purchase the two joint tenancy savings certificates. But before we may conclude that this is so we must consider the effect of certain statutes.

The key issue is whether or not a presumption of undue influence exists against Gunder, and if so, did he successfully rebut that presumption.

The trial court, relying primarily on §§ 3–02–05 and 59–01–16, NDCC, determined that Gunder, as an agent for his mother, had to overcome a presumption that any advantage he obtained from his mother while acting as her agent was obtained without consideration and under undue influence. Section 3–02–05, NDCC, in pertinent part provides:

"An authority expressed in general terms, however broad, does not authorize an agent:

3. To do any act which a trustee is forbidden to do by the provisions of sections 59–01–09 to 59–01–19, inclusive."

■ The above statute establishes the general rule that an agent is a fiduciary and has an obligation to his principal analogous to that of a trustee towards his beneficiary, and that the acts of the agent will be judged with substantially the same degree of strictness as those of a trustee. *Spector v. Miller*, 199 Cal.App.2d 87, 18 Cal.Rptr. 426 (1962); *In re Arbuckle's Estate*, 98 Cal. App.2d 562, 220 P.2d 950 (1950).

The following pertinent provisions of the North Dakota Century Code are important in defining Gunder's duties as a fiduciary in this case:

Section 59–01–09. *Good faith required of trustee.*

"In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind."

Section 59–01–11. *Transactions adverse to beneficiary prohibited—Exceptions.*

"Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision and without the use of any influence on the part of the trustee, permits him to do so; . . . .."

Section 59–01–12. *Use of influence for own advantage prohibited.*

"A trustee may not use the influence which his position gives him to obtain any advantage from his beneficiary."

Section 59–01–15. *Violation is a fraud against beneficiary.*

"Every violation of the provisions of section 59–01–09, 59–01–10, 59–01–11, 59–01–12, 59–01–13, and 59–01–14 is a fraud against the beneficiary of the trust."

Section 59–01–16. *Presumption against trustee.*

"All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration and under undue influence." [2]

■■■ The combined provisions of the foregoing sections not only define the responsibilities of Gunder as a fiduciary in this case, but also set forth that in a transaction between principal and agent in which an agent obtains a benefit, a presumption arises against its validity which the agent must overcome. *Barnes v. Dobbins,* 159 Cal.App.2d 737, 324 P.2d 696 (1958); *Helbing v. Helbing,* 89 Cal.App.2d 224, 200 P.2d 560 (1949); See also, 3 Am.Jur.2d *Agency* § 227; Bogert, Trusts and Trustees (Rev. 2d ed.) § 544. The presumption against the agent arises in cases in which the principal makes a gift as well as in other transactions. As summarized in 3 Cal.Jur.3d *Agency* § 102:

"As in other transactions by which an agent receives a benefit, if the principal makes a gift to the agent a presumption arises against its validity which the agent must overcome. [*Hemenway v. Abbott,* 8 Cal.App. 450, 97 Pac. 190 (1908); *Webb v. Saunders,* 89 Cal.App.2d 732, 201 P.2d 816 (1949).] Since this requirement applies to gratuitous agents as well as to agents for hire, a conveyance to a gratuitous agent

without consideration places the burden upon him to show that the deed was made freely and voluntarily, with knowledge of all the facts, and with perfect understanding of the effect of the transfer. [*Webb v. Saunders, supra.*] If the absolute good faith, knowledge, and intent of both parties is clearly established, however, a gift by a principal to his agent may be valid. [*Hemenway v. Abbott, supra; Helbing v. Helbing,* 189 Cal. App.2d 224, 200 P.2d 560 (1949).]"

In this case Gunder received a substantial benefit from his mother while acting as her agent in purchasing the savings certificates in the form of being named a joint owner of those certificates. Consequently, if Gunder was to retain those benefits he was required to overcome the statutory presumption of undue influence created by §§ 3–02–05 and 59–01–16, NDCC. Rule 301(a), North Dakota Rules of Evidence, provides that a:

" . . . presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate. A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

The district court, as the trier of fact in this case, made the following pertinent statements in a document labeled "Findings of Fact, Conclusions of Law and Order for Judgment":

"Morris Mehus testified that as attorney-in-fact with his brother, Gunder Mehus, he signed the check payable to the Grand Forks Federal Savings & Loan Association, dated September 29, 1969, (Exhibit B) and at that time he did not know and was not informed that savings certificate No. 13789 in the sum of $10,000.00 would be issued jointly to his brother,

---

**2.** The above cited sections of Ch. 59–01, NDCC, as well as previously referenced sections of Ch. 3–01, NDCC, were derived from the California Civil Code without substantial change in language. Throughout this opinion we have extensively cited California case law. Although these decisions, for the most part, had not been rendered in 1877 when these sections were adopted in our Civil Code, we find them pertinent for their persuasive reasoning.

Gunder Mehus, and his mother, Artha Mehus.

"Morris Mehus also testified that after the investment in the savings certificate had been made, and it had been issued jointly to his brother and his mother, that he became aware of the fact of the joint ownership, and that Gunder Mehus told him, ' * * * You might as well have one issued jointly to you, too * * *.' or words to this effect and that he refused. Morris Mehus also testified that at the time of the transaction he had no knowledge or information with respect to the issuance of the check in the sum of $5,000.00 (as exemplified by Exhibit C) which was used by Gunder Mehus to purchase certificate of deposit No. 803615 from Midwest Federal Savings & Loan Association (Exhibit 4) and issued to Artha Mehus and Gunder Mehus, as joint tenants with right of survivorship.

.     .     .     .     .

".   .   . There is stark contrast between the good faith conduct of Morris Mehus as attorney-in-fact for his aged and invalid mother and that of Gunder Mehus."

■ Although not all of the above statements were specifically designated findings of fact, this court has said on numerous occasions we will recognize and consider findings of fact regardless of the label that may be placed upon them. *Rummel v. Rummel,* 265 N.W.2d 230 (N.D.1978); *Jahner v. Jacob,* 233 N.W.2d 791 (N.D.1975). The district court under the heading "Findings of Fact" made the following statements which we believe are conclusions of law or a mixture of fact and law:

"2

"*Found,* Under the circumstances, Gunder Mehus has the burden of proving that the transaction is not tinged with misrepresentation, concealment, threat or adverse pressure of any kind or that the transaction is not in violation of law."

"5

"*Found,* that the appellant, Gunder Mehus, has not overcome the presumption of misrepresentation, concealment, threat or adverse pressure of any kind."

■ The existence or nonexistence of undue influence is a finding of fact. *Mehus v. Thompson, supra* at 926. The trial court, in reaching its conclusion that Gunder did not successfully rebut the statutory presumption, impliedly determined the evidence introduced by Gunder was insufficient to make a clear showing of the absence of undue influence. In such a situation the presumption controls and the trier of fact must be governed accordingly. Rule 301, North Dakota Rules of Evidence.

■ In our review of the trial court's determination in this case, we must recognize Rule 52(a), North Dakota Rules of Civil Procedure, which prohibits us from setting aside a trial court's findings of fact unless they are clearly erroneous, after giving due regard to the opportunity of the trial court to assess the credibility of witnesses. We have stated a finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *In re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ After reviewing the evidence in this case we are not convinced a mistake has been made. Although Gunder introduced evidence from which the absence of undue influence could be inferred, such as a history of gift-giving by Artha and her awareness of the creation of the joint tenancy accounts, we agree with the trial court these inferences were not strong enough to overcome a statutory presumption of undue influence. The dependent bedridden state of Artha presented great opportunity for the exercise of undue influence by one who took care of her and occupied and acted in a fiduciary capacity for her. We also note the testimony of Morris Mehus indicated, in

a certain degree, the lack of good faith on the part of Gunder surrounding the creation of these certificates. These considerations could well have assisted the trial court in reaching its belief that sufficient credible evidence was not introduced to rebut the presumption. With a lack of credible evidence to rebut the presumption, under our rules of evidence, the presumption controls.

Gunder argued the district court failed to give weight to a presumption arising in his favor under the provisions of § 30.1–31–04(1), NDCC, which states in pertinent part:

"Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created."

Even if we assume § 30.1–31–04, NDCC, creates a presumption in favor of a surviving joint tenant, that statute presumes a validly created joint account in the first instance. However, in this case, the account was invalidly created through the violation of a fiduciary duty, the presumption never arises and consequently has no effect.

We realize the heavy burden placed upon a fiduciary in overcoming the statutory presumption of § 59–01–16, NDCC. We are also aware of the confidential position these fiduciaries occupy and the many opportunities for abuse of that position. Our Legislature, being aware of these dangers adopted the presumption in § 59–01–16, NDCC, to prevent fiduciary abuses and to permit the fiduciary from reaping the benefits from such abuses. A fiduciary is charged with knowledge of the law and must act accordingly. If he is to receive the benefits from a good faith transaction with his principal or beneficiary, he must also assume the burden of developing a record sufficient to satisfy the requirements of law. If he fails to meet that burden, as Gunder has failed to do in this case, he suffers the risk of losing the benefits of the transaction.

In summary, trust, reliance, confidence, faith and integrity are all essential elements of a successful relationship between a fiduciary, his principal and the public, and if in order to preserve and maintain such relationship it is necessary, in "self-dealings" to impose a burden upon the fiduciary of overcoming the presumption of undue influence and lack of consideration or accept the risk, so be it. The failure to overcome the statutory presumption of undue influence relates back to and involves the ratification discussed earlier herein even though there was evidence to support the ratification.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., VANDE WALLE and PEDERSON, JJ., and GLASER, District Judge, concur.

GLASER, District Judge, sitting in place of PAULSON, J., disqualified.