ESTATE OF Philippine ZINS, by William C. KELSCH, in his capacity as Personal Representative, Plaintiff and Appellant,

v.

Eugene ZINS, Defendant and Appellee.

Civ. No. 870213.

Supreme Court of North Dakota.

March 7, 1988.

Albert A. Wolf of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff and appellant.

Malcolm H. Brown of Bair, Brown & Kautzmann, Mandan, for defendant and appellee.

VANDE WALLE, Justice.

William C. Kelsch, acting as the personal representative of the estate of Philippine

Zins, appealed from a judgment dismissing an action seeking to impose a trust upon Eugene Zins. We reverse and remand.

In 1973 Philippine Zins (decedent) and her husband, Gerhard Zins, executed virtually identical wills. Under the terms of each spouse's will, all of that person's property was to pass to the other spouse if he or she survived; however, if the other had predeceased, the bulk of the estate was to go to the following three institutions: St. Lawrence Catholic Church of Flasher, North Dakota; St. Vincent's Nursing Home of Bismarck, North Dakota; and the Society for Crippled Children of Jamestown, North Dakota.

Gerhard Zins died in 1983. Prior to his death he had conducted all the business and financial affairs of himself and the decedent. Subsequent to Gerhard's death, the decedent requested that Eugene Zins, her brother-in-law, assist her in handling her business affairs because she had difficulty reading and writing. Eugene Zins consented to do this. Eugene also assisted the decedent in closing the estate of Gerhard. While doing this the decedent expressed concern that a safe-deposit box did not have her name on it and had to be broken open at an additional cost to her.

At various times during the following year, the decedent changed all of her bank accounts and certificates of deposit so that they were held jointly by her and Eugene. These constituted the bulk of the decedent's estate.

The decedent died on October 1, 1984. Subsequently, the proceeds of a life-insurance policy were paid to the estate of Gerhard Zins. Eugene deposited these funds in his own checking account.

Following the decedent's death, the personal representative of her estate brought this action. In it he argued various theories in seeking to impose a trust upon Eugene consisting of the accounts and certificates of deposit which had been changed so that they were held jointly by the decedent and Eugene. The action also sought the return to the estate of the life-insurance policy money issued to the estate of Gerhard Zins which had been deposited by Eugene in his own account.

At trial, after the conclusion of the plaintiff's case, Eugene moved for a dismissal of the case pursuant to Rule 41(b), N.D.R. Civ.P. The court granted the motion. A judgment was entered awarding plaintiff the sum of $1,076.96 for the life-insurance policy money, granting certain costs to Eugene, and dismissing the remainder of the complaint seeking to impose a trust upon Eugene. It is from this judgment that the personal representative appealed.

■ The sole basis for this appeal is the personal representative's contention that the trial court erred in not allowing the personal representative the evidentiary presumption that the decedent was unduly influenced by Eugene Zins because there was a relationship of "personal confidence" between them. We reverse because we believe the trial court utilized the wrong standard in determining whether the personal representative was entitled to the presumption. Therefore, we decline to consider the factual question of whether the personal representative was entitled to the evidentiary presumption. We leave that determination to the trial court on remand.

■ The personal representative predicates his argument that a presumption of undue influence should have been allowed under Sections 59-01-08 and 59-01-16, N.D.C.C. Section 59-01-08 provides:

"Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the meaning of this chapter not only as to the person who reposes such confidence, but as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control."

Section 59-01-16 provides:

"All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into

by the latter without sufficient consideration and under undue influence."

Thus, if a person assumes a relation of personal confidence he becomes a trustee, and any transaction he enters into with the other person by which he gains an advantage is presumed to be made under undue influence. If a party establishes sufficient facts to give rise to the presumption, the burden then shifts to the other party to prove "that the nonexistence of the presumed fact is more probable than its existence." Rule 301, N.D.R.Ev.

It appears that the trial court required clear and convincing evidence of a "relation of personal confidence" before it would allow a presumption of undue influence against Eugene. The court ruled that the personal representative failed to produce that level of evidence. We believe that rather than requiring clear and convincing evidence of a "relation of personal confidence" the trial court should have required only a preponderance of evidence to establish a "relation of personal confidence."

■ Section 59–01–08, which deems a person assuming a "relation of personal confidence" a trustee, is derived from Section 2219 of the California Civil Code (repealed by 1986 Cal.Stat. ch. 820, § 7). While we are not compelled to interpret our statute in the same way as the State from which our law is derived, such decisions are highly persuasive. *Loken v. Magrum*, 380 N.W.2d 336 (N.D.1986). In construing that statute the California courts have required that a person seeking to establish a "relation of personal confidence" do so by only a preponderance of the evidence. As one court stated,

"The cited cases are to the effect that a confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another, and that such relationship is a fact to be established in the same manner and by the same kind of evidence as any other fact is proven." *In re Rugani's Estate*, 108 Cal.App.2d 624, 239 P.2d 500, 505 (1952).

See also *Cullen v. Spremo*, 142 Cal.App.2d 225, 298 P.2d 579 (1956) [finding that evidence that a man kept books for and advised an elderly man who had difficulty reading and writing was sufficient to establish a relationship of personal confidence]; *Roeder v. Roeder*, 118 Cal.App.2d 572, 258 P.2d 581 (1953) [finding that evidence that a grandniece who occasionally discussed her granduncle's business affairs with him was insufficient to establish a confidential relationship]; *Bank of America Nat. Trust & Savings Assn. v. Crawford*, 69 Cal.App. 2d 697, 160 P.2d 169 (1945). We agree with this approach, and thus we hold that a party must establish a "relation of personal confidence" by a preponderance of the evidence.

■ While arguing in support of the trial court's use of the clear-and-convincing-evidence standard, Eugene has cited cases which require the party asserting an implied or constructive trust to prove the trust by clear and convincing evidence. See, e.g., *Zundel v. Zundel*, 278 N.W.2d 123 (N.D.1979). He argues that this evidentiary standard should also be required to establish a "relation of personal confidence" because persons in such relationships are considered trustees under Chapter 59–01. However, this argument fails to appreciate that when a "relation of personal confidence" is established it does not create an implied or constructive trust in the sense that property is held by one for another. Rather, establishing a "relation of personal confidence" only gives rise to a presumption of undue influence in transactions whereby the trustee gains an advantage from his beneficiary. The presumption may be rebutted by the opposing party.

■ Eugene also argues that he was entitled to have the plaintiff subjected to a standard of producing clear and convincing evidence because of Section 30.1–31–04(1), N.D.C.C. That section provides:

"Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention at the time the account is created.* If there are two or

more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous interests under section 30.1–31–03 augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties." [Emphasis added.]

Eugene contends that this statute requires the personal representative to disprove the validity of the joint accounts by a clear-and-convincing-evidence standard. We disagree.

Section 30.1–31–04(1) is not concerned with the validity of the creation of a joint account. Rather, it is concerned solely with defining the type of interest created by a joint account. This is apparent from a review of the comments to this section. Those comments state that the effect of the section "is to make an account payable to one or more of two or more parties a *survivorship arrangement* unless 'clear and convincing evidence of a different contention' is offered." [Emphasis added.] In this case we are not concerned with what was created by the joint accounts; we are concerned with whether the decedent was unduly influenced to create those accounts. *See Estate of Aiello*, 106 Cal.App.3d 669, 165 Cal.Rptr. 207 (1980). Therefore, Section 30.1–31–04(1) is not applicable to this case.

In arguing that the personal representative was required to disprove the validity of the joint accounts by clear and convincing evidence under Section 30.1–31–04(1), Eugene cites *Matter of Estate of Bendickson*, 353 N.W.2d 320 (N.D.1984). In *Bendickson* we discussed the effect of Section 30.1–31–04 on the rule that "Parties asserting a constructive trust bear the burden of proving the existence of the trust by clear and convincing evidence ..." 353 N.W.2d at 323. We stated:

"When the statute requires clear and convincing evidence to establish a con-

structive trust, a trust will not be upheld 'if the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust.' *Section 30.1–31–04, NDCC, provides Sylvia with sufficient 'reasonable explanation' and there is no need for further evidence."* [Citations omitted; emphasis added.] *Id.*

To the extent that *Bendickson* is in conflict with our opinion, it is overruled. However, although we disagree with the reasoning in *Bendickson*, we agree with the result reversing a judgment which required a daughter who assisted her mother in preparing "do-it-yourself probate-avoidance forms" to make an accounting of all property held by the mother at the time of her death. We based our result upon the statement that "A daughter who assists and advises her mother is not, without more, considered a fiduciary under Chapter 59–01, NDCC." 353 N.W.2d at 323.

The conclusion that Section 30.1–31–04(1) is not applicable when determining whether a joint account was validly created was clearly stated in *Matter of Estate of Mehus,* 278 N.W.2d 625 (N.D.1979). In *Mehus* we upheld the application of the presumption of undue influence in Section 59–01–16 against a son who became a cosigner of a joint account with his mother after she had given him a power of attorney.[1] We rejected the contention that Section 30.1–31–04(1) provided a presumption in favor of the joint-account survivor, stating:

"Even if we assume § 30.1–31–04, NDCC, creates a presumption in favor of a surviving joint tenant, that statute presumes a validly created joint account in the first instance. However, in this case, the account was invalidly created through the violation of a fiduciary duty, the presumption never arises and consequently has no effect." 278 N.W.2d at 634.

Therefore, Section 30.1–31–04(1) placed no duty on the personal representative to

---

1. The "relation of personal confidence" established in *Mehus* between the mother and son was not necessarily based on their familial rela-
tion, but on the power of attorney granted to the son by the mother.

show clear and convincing evidence that the joint account was invalid.

We conclude that the proper standard to be used to determine whether a "relation of personal confidence" exists is that of a preponderance of the evidence. Therefore, the judgment is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.