Estate of Nelson, 553 N.W.2d 771 (N.D. 1996)|N.D. Supreme Court|
Estate of Nelson, 553 N.W.2d 771 (N.D. 1996)
[Go to Documents]
Filed Oct. 1, 1996
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
In the Matter of the Estate of Leif N. Nelson, Deceased
Dewain Nelson, Personal Representative of the Estate
of Leif N. Nelson, Deceased, Appellant
v.
Donna J. Stebleton, Nels E. Nelson, Lori L. Vallier,
and Lisa R. Hawley, Appellees
Civil No. 960086
Appeal from the District Court for Wells County, Southeast Judicial District, the Honorable James M. Bekken, Judge.
AFFIRMED.
Opinion of the Court by Sandstrom, Justice.
Gregory C. Larson, of Wheeler Wolf, P.O. Box 2056, Bismarck, N.D. 58502-2056, for appellant.
Bryan Van Grinsven, of Farhart, Lian, Maxson, Louser & Zent, 600-22nd Avenue N.W., Minot, N.D. 58703, for appellees.
[553 N.W.2d 772]
In the Matter of Estate of Leif N. Nelson
Civil No. 960086
Sandstrom, Justice.
Dewain Nelson, as personal representative of the estate of Leif N. Nelson, appealed from a judgment approving a final distribution of the estate. We hold the trial court did not clearly err in finding Leif N. Nelson lacked capacity to change ownership of two of his bank accounts. We affirm.
I
Leif N. Nelson died on June 27, 1990. His 1967 will devised his estate equally to his two sons, Leif E. Nelson and Dewain Nelson. Leif E. Nelson predeceased his father, and under his father's will, his share of his father's estate passed to his children. The dispute in this case is whether two of Leif N. Nelson's bank accounts are probate assets which pass under his will, or joint tenancy accounts which pass by right of survivorship directly to Dewain Nelson.
On May 30, 1990, Leif N. Nelson was moved from the Maddock Memorial Nursing Home to St. Aloisius Medical Center in Harvey. He was then 82 years old and was suffering from several serious medical ailments, including poor eyesight, chronic lung disease, coronary artery disease, congestive heart disease, angina pain, and a cancerous left temporal parietal brain tumor with edema.
According to Dewain Nelson, on June 3, 1990, Leif N. Nelson directed him to have a power of attorney prepared and also discussed changing two of Leif N. Nelson's bank accounts into joint tenancy for himself and Dewain Nelson. On June 4, Leif N. Nelson executed a general power of attorney giving Dewain Nelson authority over his financial affairs. On June 11, Leif N. Nelson executed two signature cards which changed two of his bank accounts into joint tenancy accounts with Dewain Nelson. Leif N. Nelson ultimately died in the hospital on June 27.
The trial court concluded Leif N. Nelson lacked capacity to change the two bank accounts into joint tenancy accounts, finding:
"A total review of the evidence convinces the Court that Leif did not have the necessary mental capability to fully understand that the ramifications of his signing the signature cards on June 11, 1990, was the legal transferring of the two bank accounts into joint tenancy with right of survivorship between himself and Dewain. Accordingly, since [Leif] did not have the capability of contracting, no valid joint tenancy
[553 N.W.2d 773]
accounts were created between himself and Dewain."
The trial court also found a confidential relationship existed between Dewain Nelson and Leif N. Nelson when the signature cards were executed, and the change in the accounts was a transaction by which Dewain Nelson obtained an advantage from Leif N. Nelson. The court concluded, under N.D.C.C. 59-01-08 and 59-01-16, those circumstances gave rise to a presumption of undue influence and shifted the burden to Dewain Nelson to prove the nonexistence of undue influence was more probable than its existence. See N.D.R.Evid. 301. The court found Dewain had failed to prove the nonexistence of undue influence.
The trial court thus concluded the two bank accounts were part of Leif N. Nelson's probate estate which passed under his will. After a final accounting and distribution of Leif N. Nelson's estate, Dewain Nelson, as personal representative of the estate, appealed.
The district court had jurisdiction under N.D. Const. Art. VI, 8, and N.D.C.C. 27-05-06 and 30.1-02-02. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, 2, 6 and N.D.C.C. 28-27-01 and 30.1-02-06.1.
II
Dewain Nelson contends the trial court clearly erred in finding Leif N. Nelson lacked capacity to change the two bank accounts into joint tenancy accounts.
Before a court may set aside a transaction on the ground of mental incapacity, the party attacking the validity of the transaction must show the grantor, at the time of the transaction, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction. Slorby v. Johnson, 530 N.W.2d 307, 310 (N.D. 1995); Runge v. Moore, 196 N.W.2d 87, 103 (N.D. 1972); Lee v. Lee, 70 N.D. 79, 292 N.W. 124, 126 (1940); Meyer v. Russell, 55 N.D. 546, 214 N.W. 857, 869 (1927). Cf.Matter of Estate of Wagner, 551 N.W.2d 292, 296 (N.D. 1996) (testamentary capacity requires testator to have sufficient strength and clearness of mind to know the nature and extent of property, the nature of act to be performed, the names and identities of persons who are the objects of bounty, and to appreciate the relation of those factors and recollect the decision).
A trial court's finding on capacity, or lack of capacity, is a question of fact, which will not be overturned on appeal unless clearly erroneous. Slorby at 310; see Runge at 96 (under former procedure of trial de novo, supreme court gives appreciable weight to finding of capacity by trial judge); cf. Wagner at 295 (testamentary capacity is a question of fact). Under N.D.R.Civ.P. 52(a)we will not set aside a trial court's findings of fact unless they are clearly erroneous. Slorby at 310. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. Slorby at 310.
Here, there was conflicting evidence about Leif N. Nelson's capacity to execute the signature cards for the two bank accounts. His granddaughters, Lisa Hawley and Lori Keller, both testified they believed he was confused and did not understand the legal effect of the signature cards. They said there were times when he recognized them, and there were also times when he did not recognize them. Keller testified she saw him about eighty times during his hospitalization, and he was "out more than he was in as far as alertness, knowing what was going on. He had to be kept reminded what was happening, who was there visiting him, what the nurses were going to be doing to him." Dr. Charles Nyhus, Nelson's treating physician, testified "based on the physical evidence of the tumor and based on the medical record, it is probable that this tumor had an effect on his ability to make a decision." According to Dr. Nyhus, Nelson probably did not have capacity to execute the signature cards. Dr. Kon-Hweii Lee examined Nelson's medical records and testified Nelson had an impairment of cognitive function most of the time. Dr. Lee testified Nelson was confused and disorientated and "[i]t's very likely he probably
[553 N.W.2d 774]
would not be understanding . . . the nature of the business he was doing."
Dr. Richard Galbraith also examined Nelson's medical records and opined to "a reasonable degree of medical certainty, Mr. Nelson clearly understood and was capable of signing the bank signature cards." Dewain Nelson testified he believed Leif N. Nelson was competent when he signed the signature cards. Additionally, two of Dewain Nelson's sons testified they believed Leif N. Nelson knew what he was doing when he signed the signature cards. Mary Lund, a nurse at the hospital, witnessed Nelson's signature on the bank cards. According to Lund, during his hospitalization, Nelson was having trouble communicating, but she thought he understood what he was doing when he signed the signature cards.
The trial court was in the best position to weigh the conflicting evidence and judge the credibility of the witnesses. Wagner at 297. If reasonable evidence in the record supports a trial court's findings, we will not retry the case and substitute findings we might have made for those of the trial court. Buzick v. Buzick, 542 N.W.2d 756, 758 (N.D. 1996). Although there was evidence in this record which would have supported a finding of capacity, "[w]e will not reexamine findings of fact made by the trial court upon conflicting evidence, and a choice between two permissible views of the weight of the evidence is not clearly erroneous." Buzick at 758. We are not left with a definite and firm conviction the trial court made a mistake in finding Leif N. Nelson lacked capacity to execute the two signature cards. We therefore hold the trial court's finding of incapacity is not clearly erroneous.(1)
III
We affirm the judgment.
Dale V. Sandstrom
William A. Neumann
Mary Muehlen Maring
Herbert L. Meschke
Gerald W. VandeWalle, C.J.
Footnote: 1. Because our resolution of the capacity issue is dispositive of this appeal, it is unnecessary for us to consider issues about the presumption of undue influence.