1998 ND 16

**Estate of Euvagh WENZEL–MOSSET, BY R.D. GAUKLER, in his capacity as Special Administrator, Plaintiff and Appellant,**

v.

**Grace NICKELS, Maggie Volk, Defendants and Appellees,**

and

**Jeffrey L. Sheets, Defendant.**

**Civil No. 970170.**

Supreme Court of North Dakota.

Jan. 21, 1998.

spiracy claims against Grace Nickels, Maggie Volk, and Jeffrey Sheets. We affirm.

## I

[¶ 2]Euvagh Wenzel–Mosset died on January 20, 1994, at age eighty-one. She had been married twice. Albert Wenzel, her first husband, died in 1979. She then married Nick Mosset, who died in 1983. Wenzel–Mosset did not have her own children, but she gained adult stepchildren by her marriage to Nick Mosset. Her only living relatives, other than her stepchildren, were her sister-in-law Grace Nickels, Albert's sister; her niece Elizabeth Nickels, Grace's daughter; and Bruce Nickels, Grace's son.

[¶ 3]Wenzel–Mosset was an educated and independent woman. After the death of each husband, she handled her own personal and financial affairs. She lived alone in a two-story apartment until just before her death. Wenzel–Mosset changed her Will or the beneficiaries on her certificates of deposit in 1983, 1984, 1989, and again in 1994, just before her death. Wenzel–Mosset's previous lawyer recalls her speaking to him about making changes in her Will in 1993, but she did not follow through with the changes.

[¶ 4]On July 31, 1993, Grace and Beth Nickels visited Wenzel–Mosset at her home. Grace and Beth Nickels observed Wenzel–Mosset had become inattentive to her personal appearance, and her apartment was not well kept. Grace Nickels arranged and initially paid for a housekeeper, Maggie Volk, to help Wenzel–Mosset. Wenzel–Mosset later made direct payments to Volk for her services. Volk provided cleaning services, purchased groceries, and assisted Wenzel–Mosset with her personal needs. During this time, Wenzel–Mosset continued to pay her own bills.

[¶ 5]On January 11, 1994, Volk found Wenzel–Mosset lying on her bathroom floor, unable to get up. Wenzel–Mosset had apparently been there for six to eighteen hours. Volk helped Wenzel–Mosset into bed, cleaned her, and cared for her. This same day, Wenzel–Mosset met with a lawyer, Jeffrey Sheets, and discussed having a new Will made. Wenzel–Mosset gave Volk a hand-

Lawrence R. Klemin of Bucklin, Klemin & McBride, Bismarck, for plaintiff and appellant.

Thomas A. Dickson and Timothy Q. Purdon of Dickson Law Office, Bismarck, for defendants and appellees.

NEUMANN, Justice.

[¶ 1]The Estate of Euvagh Wenzel–Mosset appeals from the trial court's May 13, 1997, amended judgment dismissing the Estate's mental capacity, undue influence, and con-

written statement, which Volk was to take to the First National Bank of Linton, instructing the bank to add the names of Maggie Volk and Grace Nickels to her certificates of deposit and checking accounts. Later that day, Wenzel–Mosset executed the account agreements, and asked Volk to return them to First National Bank of Linton. Volk delivered these documents to the bank on January 12, 1994.

[¶ 6]In the afternoon of January 12, 1994, a public health nurse visited Wenzel–Mosset and determined she required hospitalization. Wenzel–Mosset was admitted for observation purposes only. Dr. David Field, her attending physician, did not find a physical reason for her fall, or detect any real trauma from it. Wenzel–Mosset was diagnosed as suffering from dementia and physical problems including open sores, psoriasis, and malnutrition. Wenzel–Mosset weighed seventy-five pounds, thirty-two pounds less than she had weighed in 1985. The parties dispute whether Wenzel–Mosset was mentally alert at this time.

[¶ 7]On January 14, 1994, Dr. Field determined guardianship and conservatorship proceedings were necessary, and transferred Wenzel–Mosset to a nursing home. Also on January 14, 1994, Jeffrey Sheets, Wenzel–Mosset's lawyer, arrived at the hospital with a new Will for Wenzel–Mosset to sign. At first, Wenzel–Mosset was apprehensive about signing, but when Volk gave her the pen and showed her where to sign, she did so.

[¶ 8]On January 20, 1994, Wenzel–Mosset died. A Will contest followed, and the probate court determined Wenzel–Mosset's January 14, 1994, Will was not valid, finding she lacked capacity at the time she signed it. The probate court did not find Wenzel–Mosset had been subjected to undue influence, but stated she was "susceptible" to undue influence. The probate court's decision regarding the Will was not appealed. At issue in this proceeding are Wenzel–Mosset's nonprobate bank accounts.

[¶ 9]The Estate sued Grace Nickels, Maggie Volk, and Jeffrey Sheets, seeking to include in the estate the bank accounts Wenzel–Mosset had changed to be payable on death to Volk and Grace Nickels. As it had

in the probate proceeding, the Estate based its claim on lack of capacity and on undue influence. The Estate alleged a confidential relationship between Volk and Wenzel–Mosset, creating a presumption of undue influence. The Estate also alleged civil conspiracy between Grace Nickels and Volk.

[¶ 10]The trial court heard testimony from several witnesses, including both parties' medical experts. The Estate's experts opined Wenzel–Mosset was suffering from senile dementia during the period in question. The defendants' expert said the Estate's expert opinions on Wenzel–Mosset's mental capacity on January 11 were lacking, because neither of the Estate's experts had met with Wenzel–Mosset at the time she changed her bank accounts. The defendants' expert testified Wenzel–Mosset was capable of lucid moments, even if she was suffering from dementia.

[¶ 11]The trial court, while taking judicial notice of the probate court's findings, found there was not sufficient evidence to show Wenzel–Mosset lacked capacity when she changed the bank accounts and certificates of deposit into joint tenancy accounts. The trial court also found the changes in the accounts were not the result of undue influence or a conspiracy. The trial court found a confidential relationship between Volk and Wenzel–Mosset existed, but ruled the presumption under N.D.C.C. § 59–01–16 does not cover transactions entered with the First National Bank, an independent contractor. The trial court concluded the bank's involvement, initiated by Wenzel–Mosset to contract for their services, removes the transaction from the presumption of undue influence. Alternatively, the trial court concluded there was sufficient evidence to overcome the presumption of undue influence, if a presumption existed.

II

[¶ 12]The Estate argues the trial court erred in finding Wenzel–Mosset was mentally competent when she changed her bank accounts. The Estate points to N.D.C.C. § 14–01–01, which states: "A person entirely without understanding has no

power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family." Believing Wenzel–Mosset lacked mental capacity at the time of the transaction, the Estate contends the agreement to change the bank accounts is subject to rescission under N.D.C.C. § 14–01–02. Section 14–01–02, N.D.C.C., states: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been determined judicially upon application for the appointment of a guardian is subject to rescission as provided by the laws of this state." According to the Estate, Wenzel–Mosset was so mentally weak she could not understand the nature and effect of her decision. Therefore, the changes she made in her bank accounts' should be set aside. *Slorby v. Johnson*, 530 N.W.2d 307, 310 (N.D.1995).

[¶ 13]However, before a court may set aside a transaction on the ground of mental incapacity, the party attacking the validity of the transaction has the burden to prove the grantor was unable to comprehend the nature and effect of the transaction. *Matter of Estate of Nelson*, 553 N.W.2d 771, 773 (N.D.1996). Old age alone does not render a person incompetent, even if the mind is weak or impaired or even if capacity to transact general business may be lacking. *Slorby*, 530 N.W.2d at 309. The ownership of property is absolute. *Id.* If a grantor understands the meaning and effect of a transaction disposing of her property, she may do so at her pleasure. *Id.*

[¶ 14]Capacity or lack of capacity is a question of fact, and a trial court's finding on capacity will not be overturned on appeal unless it is clearly erroneous. *Estate of Nelson*, 553 N.W.2d at 773. A finding of fact is clearly erroneous if: (1) it is induced by an erroneous view of the law; (2) no evidence supports it; and, (3) on review of the record we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 15]We reject the Estate's assertion that the trial court's finding of mental capacity is clearly erroneous. While there was conflicting evidence about Wenzel–Mosset's mental capacity to execute signature cards to change the bank accounts, there was also evidence to support the trial court's finding.

[¶ 16]Physical evidence showed the instructions to the bank directing the changes were prepared by Wenzel–Mosset in her own handwriting. Testimony revealed Wenzel–Mosset's lawyer, Jeffrey Sheets, reviewed these instructions with Wenzel–Mosset, on January 11, 1994, and he clearly understood her directions. An expert for the appellees, Dr. Swenson, testified that, based on the medical record, a credible physician could not determine Wenzel–Mosset's mental status at a particular time on January 11, 1994.

[¶ 17]The record contains reasonable evidence to support the trial court's finding. Even if the record might also support a finding of incapacity, the trial court is in a better position to weigh conflicting evidence and assess credibility of witnesses. *Estate of Nelson*, 553 N.W.2d at 774. The trial court's finding that Wenzel–Mosset did not lack capacity to execute the changes in her bank accounts does not leave us with a definite and firm conviction a mistake has been made. We, therefore, hold the trial court's finding of capacity is not clearly erroneous.

### III

[¶ 18]The Estate argues, even if Wenzel–Mosset had mental capacity on January 11, 1994, the changes in the accounts were the result of undue influence. Analyzing the Estate's argument requires first a determination whether a confidential relationship existed between Wenzel–Mosset and Volk, giving rise to a statutory presumption of undue influence. Secondly, if a confidential relationship is found, it must be determined whether the presumption of undue influence applies to the transaction with the bank. Finally, if the presumption applies, the court must determine whether Volk successfully rebutted the presumption.

### A

[¶ 19]The appellees contend there was no relation of personal confidence between Wenzel–Mosset and Volk. We disagree. The determination of a relation of

personal confidence existing between Wenzel–Mosset and Volk is a finding of fact. *Black v. Peterson,* 442 N.W.2d 426, 429 (N.D. 1989). Findings of fact are clearly erroneous if we are left with a definite and firm conviction a mistake has been made after reviewing all the evidence. *Id.*

[¶ 20]The trial court found there was a confidential relationship between Volk and Wenzel–Mosset, creating a presumption of undue influence. The trial court, in support of its finding, stated:

"The evidence before the Court is persuasive that Maggie did voluntarily assume a relation of personal confidence with Euvagh. While Maggie's initial employment was that of providing house cleaning services for Euvagh, during the period of July, 1993, through January 20, 1994, the services rendered by Maggie expanded to include the personal needs of Euvagh. Said relation of personal confidence is further established by virtue of the admitted discussions between Euvagh and Maggie concerning Maggie's proposed new will, the contents thereof, the attorney who should prepare the same, and the presence of Maggie at the time of Euvagh's conference with Attorney Jeff Sheets."

[¶ 21]The appellees assert the trial court has misconstrued the phrase "relation of personal confidence" in N.D.C.C. § 59–01–08, in finding a confidential relationship between Wenzel–Mosset and Volk existed. The appellees rely on *Matter of Estate of Thomas,* 290 N.W.2d 223, 227 (N.D.1980), to support their proposition that the presumption of undue influence only applies when the beneficiary was a trustee, agent, or attorney-in-fact. We disagree.

[¶ 22]Under N.D.C.C. § 59–01–08:

*"One assuming relation of personal confidence is trustee.* Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the meaning of this chapter not only as to the person who reposes such confidence, but as to all persons of whose affairs the person thus acquires information which was given to the person in the like confidence, or over whose affairs the person, by such confidence, obtains any control."

[¶ 23]We have specifically held the making of a Will is not the type of transaction contemplated by N.D.C.C. § 59–01–08, and we do not apply that section in Will contests. *Estate of Mickelson,* 477 N.W.2d 247, 249–50 (N.D.1991). There is no need for a presumption of undue influence in will contest cases, because the criteria for such are well set out in case law. *Id.* at 250. However, this case is not a will contest.

[¶ 24]We have applied the presumption of undue influence under § 59–01–16 in the creation of bank accounts. *Matter of Estate of Dinnetz,* 532 N.W.2d 672 (N.D.1995); *Matter of Estate of Mehus,* 278 N.W.2d 625 (N.D. 1979). Those cases involved a person who assumed a relationship of personal confidence by becoming an attorney-in-fact. *Dinnetz,* 532 N.W.2d at 673; *Mehus,* 278 N.W.2d at 627. The attorney-in-fact in each case obtained an advantage by using the position of attorney-in-fact to add themselves to bank accounts of the persons they were supposed to be acting on behalf of. *Dinnetz,* 532 N.W.2d at 675; *Mehus,* 278 N.W.2d at 628.

 [¶ 25]While both *Dinnetz* and *Mehus* involved an attorney-in-fact, it is not necessary to hold such a position to have a confidential relationship. In *Dinnetz,* guided by California law, we define a confidential relationship:

"A confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another, and that such relationship is a fact to be established in the same manner and by the same kind of evidence an any other fact is proven." *Dinnetz,* 532 N.W.2d at 674 (citing *Estate of Zins by Kelsch v. Zins,* 420 N.W.2d 729, 731 (N.D.1988) (quoting *In re Estate of Rugani,* 108 Cal. App.2d 624, 239 P.2d 500, 505 (1952))).

The trial court's finding of a confidential relationship is supported by substantial evidence of the nature of the relationship between Wenzel–Mosset and Volk. The finding of a confidential relationship under N.D.C.C. § 59–01–08 creates a presumption of undue influence against such a "trustee," by appli-

cation of N.D.C.C. § 59–01–16. *Dinnetz*, 532 N.W.2d at 674. Section 59–01–16, N.D.C.C., creates a presumption against a trustee, stating: "All transactions between a trustee and the trust's beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which the trustee obtains any advantage from the trust's beneficiary, are presumed to be entered into by the latter without sufficient consideration and under undue influence." Even though a formal trust does not arise here, the person in whom the confidence is placed is deemed to be a trustee and is held to the same standard as a trustee. *Dinnetz*, 532 N.W.2d at 674, n. 2.

[¶ 26]The trial court's finding of a confidential relationship is a finding of fact that will not be reversed unless it is clearly erroneous. *Dinnetz*, 532 N.W.2d at 675. We are not convinced the trial court made a mistake in finding a relation of personal confidence; therefore, the trial court's finding of fact is not clearly erroneous.

### B

[¶ 27]The trial court, while finding a relation of personal confidence between Volk and Wenzel–Mosset, determined N.D.C.C. § 59–01–16 does not encompass transactions involving Wenzel–Mosset and the bank because the bank is an independent contractor. The trial court stated:

> "This Court has previously determined that the said contractual agreements themselves were not the product of undue influence upon Euvagh, and now determines that said contractual agreements are not between Maggie and Euvagh so as to subject the same to be presumed to be the result of undue influence.
>
> "IT IS THE OPINION OF THIS COURT that section 59–01–16 of the North Dakota Century Code does not encompass transactions entered into by the trustor or trust beneficiary with an independent contractor. Said section seeks to apply a specific presumption of undue influence as to transactions between a trustee and the trust beneficiary or trustor. The introduction of an independent contractor, such as First National Bank, re-

moves the transactions initiated by Euvagh for the contract of a new bank account and the contract for certificates of deposit, from the presumption of undue influence."

[¶ 28]The trial court's determination that the presumption raised under N.D.C.C. § 59–01–16 does not apply to transactions with First National Bank of Linton is a conclusion of law, "because that determination describes the legal effect of the underlying factual circumstances." *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 768 (N.D.1996). Therefore, the trial court's decision that § 59–01–16 does not apply to the transactions involving Wenzel–Mosset's accounts at First National Bank of Linton is a mixed question of law and fact. Mixed questions of law and fact are fully reviewable by this court, without the usual restrictions imposed by Rule 52(a), N.D.R.Civ.P. *Earth Builders, Inc. v. State*, 325 N.W.2d 258, 259 (N.D.1982); *Nygaard v. Robinson*, 341 N.W.2d 349, 354 (N.D.1983).

[¶ 29]Here, the trial court has misapplied the law by focusing its analysis on the wrong transaction. The trial court examined the contractual relationship between the bank and Wenzel–Mosset, rather than the relationship and transaction between Wenzel–Mosset and Volk. A relation of personal confidence triggers the presumption of undue influence for any transaction; it does not need to be a contractual relationship. "[I]f a person assumes a relation of personal confidence he becomes a trustee, and any transaction he enters into with the other person by which he gains an advantage is presumed to be made under undue influence." *Estate of Zins*, 420 N.W.2d at 731.

[¶ 30]This court has recognized the statutory presumption of § 59–01–16 applies in cases in which one in a relation of personal confidence makes changes to or acquires an interest in bank accounts. *Dinnetz*, 532 N.W.2d at 673–74 (recognizing presumption when attorney-in-fact's name was added to savings and checking accounts as joint tenant); *Mehus*, 278 N.W.2d at 632 (recognizing presumption applies to the purchase of savings certificates by attorney-in-fact). Because we have already recognized the

presumption applies to cases involving bank accounts, we hold the trial court's determination that the presumption does not apply is erroneous as a matter of law.

## C

[¶ 31]Having decided the presumption applies, we must next review whether the presumption was successfully rebutted. The trial court made an alternative finding regarding rebuttal of the presumption, stating: "If, however, said section is applicable to said contracts, the Court does expressly find that the evidence before the Court is sufficient to overcome the statutory presumption of undue influence by a preponderance of the evidence."

[¶ 32]Rule 301(a), N.D.R.Evid., governs the effect of presumption in civil actions. Under Rule 301: "[I]f facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate."

[¶ 33]In this case, the trial court found the presumption had been successfully rebutted. In support of its finding, the trial court stated:

"[The] evidence includes the independent character and spirit of Euvagh, Euvagh's handwritten instructions for a new will on January 4, 1994, Euvagh's independent conference with Attorney Sheets on January 11, 1994, and Euvagh's own handwritten instructions to First National Bank for the contractual agreements for a new checking account and certificates of deposit, and the contents thereof. Additionally, the evidence establishes that Euvagh maintained all of her financial affairs independent of Maggie's input, control or influence."

[¶ 34]Upon review of the record, we hold the trial court's finding the presumption of undue influence was successfully rebutted is not clearly erroneous.

## IV

[¶ 35]Finally, the Estate argued a civil conspiracy existed between Maggie Volk and Grace Nickels. The trial court found there was insufficient evidence to support the allegation a civil conspiracy existed to induce Wenzel–Mosset to enter new contracts with First National Bank. Whether a conspiracy existed is a finding of fact and will not be reversed unless it is clearly erroneous. *Matter of George Massad Trust,* 277 N.W.2d 269, 275 (N.D.1979). However, we need not review the trial court's findings, because, as a matter of law, no conspiracy could exist.

[¶ 36]A civil conspiracy is: "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." *Burr v. Kulas,* 1997 ND 98, ¶ 18, n. 3, 564 N.W.2d 631 (citations omitted); *see also* 16 Am.Jur.2d, Conspiracy, §§ 50–53.

[¶ 37]The distinguishing factor between a criminal conspiracy and a civil conspiracy is that damages, not the agreement, are the essence of the conspiracy. *Nautical Landings Marina v. First National Bank,* 791 S.W.2d 293, 299 (Tex.App.Corpus Christi 1990); 16 Am.Jur.2d, Conspiracy, §§ 49, 52, 15A C.J.S., Conspiracy § 1(1).

[¶ 38]Absent an unlawful act, there can be no damages. *Thompson v. Deloitte & Touche, L.L.P.,* 902 S.W.2d 13, 19 (Tex.App. Houston [1st Dist.] 1995); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). Because we have already decided the trial court correctly decided the undue influence claim, no civil conspiracy claim could stand on its own.

## V.

[¶ 39]Although the trial court erred regarding application of the presumption of undue influence, the court's alternative finding that the presumption was rebutted, if it indeed applied, was correct. Because the trial court's findings on the remaining issues

were not clearly erroneous, the trial court's decision is affirmed.

[¶ 40]VANDE WALLE, C.J., and MARING, MESCHKE, and SANDSTROM, JJ., concur.