2014 ND 143

The ESTATE OF Carolyn VIZENOR,
by Donald VIZENOR, Personal
Representative,

and

Estate of Leonard J. Vizenor, by Larry
Refsland, Successor Personal Repre-
sentative, Plaintiffs and Appellants
and Cross–Appellees

v.

Debra Lee BROWN and Sandra Hel-
land, Co–Personal Representatives, as
substituted for Ragna Mesling (de-
ceased), individually and as Attorney-
in–Fact for Carolyn Vizenor, Clifford
P. Stecher and Linda A. Stecher, De-
fendants

Clifford P. Stecher and Linda
A. Stecher, Appellees and
Cross–Appellants.

No. 20130161.

Supreme Court of North Dakota.

July 17, 2014.

Rehearing Denied Aug. 28, 2014.

Zenas Baer, Hawley, MN, for plaintiffs and appellants and cross-appellees.

Gary D. Ramsey, Dickinson, N.D., for appellees and cross-appellants.

CROTHERS, Justice.

[¶ 1] The Estates of Carolyn Vizenor and Leonard Vizenor ("Vizenors") appeal from a judgment dismissing their action against Clifford and Linda Stecher ("Stechers") and from orders denying their post-judgment motions. The Stechers have also cross-appealed from the judgment. We conclude Ragna Mesling, as her daughter Carolyn Vizenor's attorney-in-fact, was authorized under a power of attorney to transfer real estate to the Stechers and sufficient evidence supported the district court's findings the transfer was not the product of undue influence. Because the court did not err in dismissing the action and denying the post-judgment motions, we affirm.

I

[¶ 2] Carolyn Vizenor and Leonard Vizenor were married and lived most of their lives together in Minnesota. Ragna Mesling, a widow and Carolyn Vizenor's mother, owned real estate outside of New England, in Hettinger County. The Stechers were long-time renters of the Mesling farmland. The Vizenors sued Mesling and the Stechers, seeking to avoid a deed executed on November 28, 2006, in which Mesling, as Carolyn Vizenor's attorney-in-fact, transferred certain real estate to the Stechers. The Vizenors alleged the transaction directly resulted from improper conduct by the Stechers.

[¶ 3] In February 2005, Mesling executed deeds transferring to her daughter Carolyn Vizenor remainder interests in Mesling's farmland, mineral interests and a home. Mesling reserved a life estate. In November 2005, while living in Minnesota, Carolyn Vizenor executed a Minnesota statutory short-form power of attorney, appointing Mesling as her attorney-in-fact. The district court found that as of November 2006, Carolyn Vizenor was suffering through the last stages of terminal metastatic melanoma and had returned to New England. The court found that in late-November 2006, on being discharged from a medical center in Hettinger, both Mesling and Carolyn Vizenor expressed the wish that Carolyn Vizenor go home with her mother until she died. Additionally, at about this time, Carolyn Vizenor's husband, Leonard, was totally disabled and in a full-time care facility in Dickinson. The court found Leonard and Carolyn Vizenor had no children to care for them, and the burden fell upon Mesling.

[¶ 4] On November 28, 2006, Mesling executed the warranty deed as Carolyn Vizenor's attorney-in-fact and transferred to the Stechers without consideration Carolyn Vizenor's remainder interest in the two quarter-sections of land in Hettinger County at issue here. Mesling again re-

served a life estate in that land. In separate deeds Mesling conveyed back to herself Carolyn Vizenor's remainder interest in the home and in the mineral interests located in Hettinger County. Carolyn Vizenor died the following day. She was 70 years old at the time of her death.

[¶ 5] The Vizenors subsequently commenced this action seeking rescission and return of the real estate Mesling had transferred to the Stechers as Carolyn Vizenor's attorney-in-fact. In May 2012, while this action was pending, Mesling died and the personal representatives of her estate were substituted as party-defendants. In September 2012, the Vizenors settled their case with the personal representatives of Mesling's estate and entered into a Pierringer release. In October 2012, the district court held a trial on the action. On the day of trial, Mesling's estate moved to dismiss the cross-claim Mesling filed against the Stechers. The court granted the motion. The court also denied the Stechers' motion to dismiss the action based on the Vizenors' release of Mesling's estate.

[¶ 6] After a trial, the district court concluded Mesling's conveyances as attorney-in-fact for Carolyn Vizenor were valid. The court concluded that Carolyn Vizenor had authorized Mesling to act on her behalf to the full extent granted in the power of attorney and that no legal duty, confidential or otherwise, existed between the Stechers and Carolyn Vizenor that could have been breached. The court also found no credible evidence established the Stechers exerted undue influence on Carolyn Vizenor, but that Carolyn Vizenor authorized the gift to the Stechers. The court entered judgment dismissing the Vizenors' claims. The court also denied the Vizenors' post-trial motions for amended findings under N.D.R.Civ.P. 52 and for a new trial under N.D.R.Civ.P. 59.

II

[¶ 7] Our standard of review for an appeal from a judgment entered after a bench trial is well-established:

"In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations."

*Brash v. Gulleson,* 2013 ND 156, ¶ 7, 835 N.W.2d 798 (internal quotation marks and citations omitted); *see also Burlington N. & Sante Fe Ry. v. Burlington Res. Oil & Gas Co.,* 1999 ND 39, ¶ 10, 590 N.W.2d 433. "A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court." *MayPort Farmers Co–Op v. St. Hilaire Seed Co., Inc.,* 2012 ND 257, ¶ 7, 825 N.W.2d 883 (citation omitted).

[¶ 8] Further, this Court will not reverse the district court's decision on a motion to amend or make additional findings under N.D.R.Civ.P. 52(b) or its decision on a motion for new trial under N.D.R.Civ.P. 59 unless the court abused its discretion. *See MayPort Farmers,* 2012 ND 257, ¶ 8, 825 N.W.2d 883; *Christian v. Christian,* 2007 ND 196, ¶ 21, 742 N.W.2d 819. "A [district] court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its de-

cision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *McGhee v. Mergenthal,* 2007 ND 120, ¶ 9, 735 N.W.2d 867.

### III

[¶ 9] The Vizenors argue the Minnesota statutory durable power of attorney does not grant authority to the attorney-in-fact to convey, by gift, real property to an unrelated third party without a current expression of intent to gift from the principal. The Vizenors argue that an expression of a future intent to disinherit in-laws by the owner of real property at a remote time and place did not authorize an agent to gift the property to an unrelated third party 18 months later; that an attorney-in-fact breaches the confidential relationship by transferring property of the principal to herself and third parties without consideration, authorizing the rescission of the conveyance; and that the district court applied the incorrect standard of proof to the validity of the gift transfer.

### A

[¶ 10] Generally, a power of attorney is a written instrument that authorizes one person to act as another person's agent. *Alerus Fin., N.A. v. Western State Bank,* 2008 ND 104, ¶ 19, 750 N.W.2d 412; *Matter of Estate of Mehus,* 278 N.W.2d 625, 629 (N.D.1979). "The agent holding the power of attorney is the attorney-in-fact." *Alerus Fin.,* at ¶ 19. "Any person having capacity to contract may appoint an agent and any person may be an agent." N.D.C.C. § 3–01–04. We have described our rules for interpreting a power of attorney:

"Because a power of attorney creates an *agency relationship, agency principles are applicable in determining the authority and duties of the attorney in*

*fact.* [*Matter of Estate of Mehus,* 278 N.W.2d 625, 629 (N.D.1979) ] An agency relationship involves both a contractual and a fiduciary relationship, and the interpretation of an agent's authority is governed by the rules for construing contracts, *except to the extent the fiduciary relationship requires a different rule. Burlington N. and Santa [Sante] Fe Ry. Co. v. Burlington Res. Oil and Gas Co.,* 1999 ND 39, ¶ 15, 590 N.W.2d 433."

*Alerus Fin.,* at ¶ 19 (quoting *Estate of Littlejohn,* 2005 ND 113, ¶ 7, 698 N.W.2d 923). "We construe contractual agreements to give effect to the parties' intent, which, if possible, must be ascertained from the writing as a whole." *Littlejohn,* ¶ 7; *see* N.D.C.C. §§ 9–07–03, 9–07–04. "A contract's clear and explicit language governs its interpretation, and its 'words are construed in their ordinary sense.' " *Alerus Fin.,* at ¶ 19 (quoting *Burlington N.,* at ¶ 22); *see* N.D.C.C. § 9–07–09. The contract's language "governs its interpretation [when] the language is clear and explicit and does not involve an absurdity." *Bernabucci v. Huber,* 2006 ND 71, ¶ 15, 712 N.W.2d 323 (citing N.D.C.C. § 9–07–02). A contract is interpreted as a whole to give effect to every provision, if reasonably practicable, and each clause is used to help interpret other clauses. *See* N.D.C.C. § 9–07–06. The interpretation of a contract is question of law when the parties' intent may be ascertained from the agreement alone. *Alerus Fin.,* at ¶ 19.

[¶ 11] "An agency created under a durable power of attorney [also] entails a confidential relationship and fiduciary duties." *Alerus Fin.,* 2008 ND 104, ¶ 20, 750 N.W.2d 412; *see also Allard v. Johnson,* 2006 ND 243, ¶ 6, 724 N.W.2d 331; *Roberts v. N.D. Dep't of Human Servs.,* 2005 ND 50, ¶ 12, 692 N.W.2d 922. "Agency is the relationship which results when one person, called the principal, au-

124

thorizes another, called the agent, to act for the principal in dealing with third persons." N.D.C.C. § 3–01–01; *see Hendricks Prop. Mgmt. Corp. v. Birchwood Props. Ltd. P'ship,* 2007 ND 181, ¶ 10, 741 N.W.2d 461; *Burlington N.,* 1999 ND 39, ¶ 12, 590 N.W.2d 433; *Farmers Union Oil Co. v. Wood,* 301 N.W.2d 129, 133 (N.D. 1980). "Agency involves both a contractual relationship and a fiduciary relationship." *Hendricks,* at ¶ 10; *see also Burlington N.,* at ¶ 15.

[¶ 12] At the time relevant to this case, N.D.C.C. § 3–02–05(3) provided that "[a]n authority expressed in general terms, however broad, does not authorize an agent ... [t]o do any act which a trustee is forbidden to do by the provisions of sections 59–01–09 to 59–01–19, inclusive."[1] We have recognized the fiduciary duties imposed upon a trustee under former N.D.C.C. ch. 59–01:

> "[A] trustee must act with the highest good faith toward the beneficiary and not obtain any advantage over the beneficiary by the slightest concealment, *see* N.D.C.C. § 59–01–09, and a trustee must not take part in any transaction adverse to the beneficiary without obtaining the beneficiary's permission after full disclosure of all facts which might affect the beneficiary's own decision. *See* N.D.C.C. § 59–01–11. Section 59–01–16, N.D.C.C., establishes *a presumption all transactions between a trustee and the beneficiary are entered into without sufficient consideration and under undue influence.*"

*Burlington N.,* 1999 ND 39, ¶ 13, 590 N.W.2d 433 (emphasis added). "An agent cannot do any act that a trustee is forbid-

den to do by any of the provisions of [former] sections 59–01–09 to 59–01–19." *Allard,* 2006 ND 243, ¶ 6, 724 N.W.2d 331. Thus, "[t]he interpretation of an agent's authority is governed by rules for construing contracts, except to the extent the fiduciary relationship requires a special rule." *Hendricks,* 2007 ND 181, ¶ 10, 741 N.W.2d 461 (citing *Burlington N.,* at ¶¶ 15, 27; Restatement (Third) of Agency § 8.07 cmt. b (2006); Warren A. Seavey, *Handbook of the Law of Agency* §§ 20–21 (1964)).

[¶ 13] Under North Dakota law a principal may authorize an agent to gift property though a power of attorney:

> "If any power of attorney, durable or otherwise, or other writing authorizes an attorney in fact or other agent to perform any act that the principal might or could do or evidences the principal's intent to give the attorney in fact or agent full power to handle the principal's affairs or deal with the principal's property, the attorney in fact or agent may make gifts. The gifts may be in any amount of any of the principal's property to any individual or to an organization described in sections 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of federal tax law, or both. Notwithstanding this section, a principal, *by express words in the power of attorney or other writing,* may authorize, or limit the authority of, any attorney in fact or other agent to make gifts of the principal's property...."

N.D.C.C. § 30.1–30–06 (emphasis added).

**B**

[¶ 14] Relying on Minn.Stat. § 523.24 and *In re Conservatorship of Riebel,* 625

---

1. The Minnesota durable power of attorney executed by Carolyn Vizenor in November 2005 and the warranty deed executed by Ragna Mesling, as Carolyn Vizenor's attorney-in-fact, both predate adoption of the Uniform Trust Code in 2007. *See* 2007 N.D. Sess. Laws ch. 549. This legislation amended N.D.C.C. § 3–02–05 and repealed N.D.C.C. ch. 59–01. *See* 2007 N.D. Sess. Laws ch. 549, §§ 1, 27. We apply the version of the statutes in effect at the time of the transaction at issue in this case.

N.W.2d 480, 482 (Minn.2001) (scope of authority conferred on an attorney-in-fact by the execution of a power of attorney is defined by statute), the Vizenors argue the Minnesota statutory short-form durable power of attorney executed by Carolyn Vizenor did not permit Mesling as attorney-in-fact to convey the real property by gift to an unrelated third party without a current expression of intent to gift from the principal. The Vizenors contend that Carolyn Vizenor's property only could be transferred by operation of law or by a valid written instrument under N.D.C.C. § 47–10–01 and that Mesling, as Carolyn Vizenor's agent, was not authorized to "gift" the relevant quarter-sections of land to the Stechers, who did not "have any meaningful relationship with Carolyn." They argue the power of attorney did not give Mesling authority to gift property to the Stechers and Mesling was not "authorized by writing" to dispose of the real property by gift.

[¶ 15]  At the outset, we note the Vizenors' arguments rely both on Minnesota law regarding the scope of authority of one acting under the power of attorney and on North Dakota law regarding the confidential relationship and fiduciary duties imposed on an agent. Generally, "[w]hether an agreement authorizes one person to act for another generally is to be determined by the law of the place where the agreement was made, and the law of the place where a power of attorney was executed is generally controlling *except that the law of the jurisdiction in which immovable property is situated controls the interpretation and validity of powers of attorney to transfer an interest in such property.*" 2A C.J.S. *Agency* § 2 (2013) (emphasis added); *see Callwood v. Virgin Islands Nat'l Bank,* 221 F.2d 770, 776 (3d Cir.1955) ("[T]he law of the situs of the land governs the validity of a transfer of

an interest in the land, including the interpretation and validity of powers of attorney to transfer such interests.") (footnotes omitted); *Dal v. Fischer,* 20 S.D. 426, 107 N.W. 534, 535 (1906) ("As the contract in controversy is one affecting real property situate in this state, where it was to be performed, its validity should be determined by the law of this jurisdiction, and not by the law of the place where it was executed."); *Morris v. Linton,* 61 Neb. 537, 85 N.W. 565, 566 (1901) ("The validity of a contract affecting real property is to be determined by the law of the place where the property is situate, and not by the law of the place where the contract was made."); *see also* Restatement (Second) of Conflict of Laws § 232 (1971) ("Whether the exercise of a power of attorney transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs.").

[¶ 16]  Here, the Vizenors are seeking rescission of the deed executed in North Dakota by Mesling as Carolyn Vizenor's attorney-in-fact, which transferred to the Stechers Carolyn Vizenor's interest in the property located in North Dakota. Thus, while we initially look to the Minnesota statute to define the powers specifically incorporated by reference under the Minnesota statutory short-form power of attorney, North Dakota law ultimately governs our interpretation and the validity of the power of attorney to transfer the interest in the land located in North Dakota.

[¶ 17]  We first examine the language of the Minnesota statutory short-form durable power of attorney, as the relevant terms are defined in Minn.Stat. § 523.24 (2004), to ascertain the authority the principal, through the power of attorney, granted to the agent under those provisions. Here, Carolyn Vizenor executed

the power of attorney on November 8, 2005. This power of attorney designated Carolyn Vizenor's mother, Mesling, as attorney-in-fact, and designated Carolyn Vizenor's husband, Leonard Vizenor, as a successor attorney-in-fact. The power of attorney provided, in relevant part:

"I, Carolyn F. Vizenor, hereby appoint the above-named Attorney(s)–In–Fact to act as my attorney(s)-in-fact:

FIRST: To act for me in any way that I could act with respect to the following matters, as each of them is defined in Minnesota Statutes, section 523.24: (To grant to the attorney-in-fact any of the following powers, make a check or "x" on the line in front of each power being granted. You may, but need not, cross out each power not granted. Failure to make a check or "x" on the line in front of the power will have the effect of deleting the power unless the line in front of the power of (N) is checked or x-ed.)

Check or "X"

_____ (A) real property transactions; I choose to limit this power to real property in _____ County, Minnesota, described as follows: (Use legal description. Do not use street address.)

_____ (B) tangible personal property transactions;

_____ (C) bond, share, and commodity transactions;

_____ (D) banking transactions

_____ (E) business operating transactions;

_____ (F) insurance transactions;

_____ (G) beneficiary transactions;

_____ (H) gift transactions;

_____ (i) fiduciary transactions;

_____ (J) claims and litigation;

_____ (K) family maintenance;

_____ (L) benefits from military service;

_____ (M) records, reports, and statements;

___X___ (N) all of the powers listed in (A) through (M) above *and all other matters;*

SECOND: (You must indicate below whether or not this power of attorney will be effective if you become incapacitated or incompetent. Make a check or "x" on the line in front of the statement that expressed your intent.)

___X___ This power of attorney shall continue to be effective if I become incapacitated or incompetent.

. . . .

THIRD: (You must indicate below whether or not this power of attorney authorizes the attorney-in-fact to transfer your property to the attorney-in-fact. Make a check or "x" on the line in front of the statement that expresses your intent).

___X___ This power of attorney authorizes the attorney-in-fact *to transfer my property to the attorney-in-fact.*

. . . ."

(Emphasis added.)

 [¶ 18] The Vizenors argue Minnesota law defines the validity and scope of the power of attorney and, as such, the power of attorney did not authorize Mesling to convey real property by gift to a non-family member. The Vizenors argue Minn.Stat. § 523.24, subd. 8(2), defining gift transactions, only confers an attorney-in-fact the authority to make gifts to organizations to which the principal has made gifts, to the principal's spouse, children and other descendants, and in some circumstances to the attorney-in-fact or those whom the attorney-in-fact has a legal obligation to support. The Vizenors contend that, because the Stechers do not meet these statutory limitations, the trans-

fer by Mesling of the real estate without consideration was contrary to the scope of the power of attorney. The Vizenors thus argue the conveyance is void.

[¶ 19] Here, the district court concluded that on November 8, 2005, Carolyn Vizenor executed the short-form power of attorney, designating Mesling as her attorney-in-fact and checking the box designated "N" on the form, which provided "(N) all of the powers listed in (A) through (M) above *and all other matters.*" The court held Mesling received authority to act on Carolyn Vizenor's behalf to the full extent of the powers granted and ultimately concluded Mesling's transfer of Carolyn Vizenor's interest to the Stechers was valid. We agree.

[¶ 20] Under Minn.Stat. § 523.24, subd. 14, "[a]ll other matters" is defined: "In a statutory short form power of attorney, the language conferring general authority with respect to all other matters, means that the principal authorizes the attorney-in-fact *to act as an alter ego of the principal with respect to any and all possible matters and affairs affecting property owned by the principal which are not enumerated in subdivisions 1 to 13, and which the principal can do through an agent.*" (Emphasis added.) This definition makes clear that, by checking "N," an attorney-in-fact is not only granted the preceding powers as defined by statute, but also receives broad additional authority to act as the principal's alter ego with respect to "any and all possible matters and affairs affecting" the principal's property. We also note under Minn.Stat. § 523.24, subd. 1(2), regarding real property transactions, a principal authorizes the attorney-in-fact "to sell, exchange, convey either with or without covenants, quitclaim, release, surrender, mortgage, encumber, partition or consent the partitioning, plat or consent platting, grant options

concerning, lease or sublet, *or otherwise to dispose of,* any estate or interest in real property." (Emphasis added.)

[¶ 21] Thus, rather than being limited by the preceding statutory definition relating to gift transactions as suggested by the Vizenors, we construe the "all other matters" provision in the power of attorney to provide the attorney-in-fact with broad authority, in addition to the listed powers to conduct the principal's affairs. Carolyn Vizenor authorized self-dealing, permitting Mesling, as attorney-in-fact, to transfer Carolyn Vizenor's property to herself, which further demonstrates the broad authority granted under this power of attorney. As discussed, under North Dakota law an attorney-in-fact may make gifts, if so provided for in the power of attorney. *See* N.D.C.C. § 30.1–30–06. Based on the language of this power of attorney, we conclude Carolyn Vizenor granted Mesling authority to transfer the North Dakota real estate to the Stechers without consideration.

[¶ 22] The Vizenors also contend the Stechers cannot be considered good faith purchasers for value and there was no direct evidence an original power of attorney was recorded. The Vizenors assert the original power of attorney was not produced by the Stechers at trial. They further argue that under Minn.Stat. § 523.19 a third party is held harmless in dealings with an attorney-in-fact only when there is compliance with Minn.Stat. §§ 523.17 and 523.18, and Minn.Stat. § 523.17 requires an affidavit of non-termination or non-revocation of the power of attorney to support a real property transaction. They argue a copy of a power of attorney without the affidavit of non-revocation is inadequate to vest the agent with authority to authorize the gifting or conveyance of real property.

[¶ 23]   However, North Dakota law governs the interpretation and validity of the power of attorney to transfer an interest in the North Dakota real property.   Under N.D.C.C. § 47–10–08, "[e]very grant of an estate in real property is conclusive against the grantor and every one subsequently claiming under the grantor, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that first is duly recorded."   Although the Vizenors question whether an original was recorded, no dispute exists that a power of attorney document was recorded with the deed transferring the interest in the property to the Stechers.   Under N.D.C.C. § 47–19–08, "[a]n instrument is *deemed* to be recorded when, whether entitled to record or not, it is deposited with the proper officer for record, if such instrument is subsequently recorded."   (Emphasis added.)   Further, N.D.C.C. § 47–19–44, provides:

> "No instrument containing a power to convey or execute instruments affecting real property, which has been recorded, is revoked by any act of the party by whom it was executed, unless the instrument containing such revocation also is acknowledged or proved, certified, and recorded in the same office in which the instrument containing the power was recorded."

While North Dakota also has a statute allowing for the recording of an affidavit to establish "conclusive proof of the nonrevocation or nontermination" of a power of attorney, *see* N.D.C.C. § 30.1–30–05, the Vizenors are not asserting Carolyn Vizenor revoked or terminated the power of attorney given to Mesling, but rather Mesling exceeded her authority under the power of attorney.   We conclude the Vizenors' argument that Mesling was without the authority to convey the property is without merit.

C

[¶ 24]   The Vizenors argue that, even if authorized by the power of attorney, the district court applied the wrong burden of proof to decide the validity of the gift transfer and that Mesling's transfer of the real estate to Stechers under the power of attorney constitutes a breach of trust requiring rescission.

[¶ 25]   Generally, we have said, "A valid gift requires an intention by the donor to then and there give the property to the donee, coupled with an actual or constructive delivery of the property to the donee and acceptance of the property by the donee." *Makedonsky v. N.D. Dep't of Human Servs.*, 2008 ND 49, ¶ 11, 746 N.W.2d 185 (citing *Bellon v. Bellon*, 244 N.W.2d 227, 228 (N.D.1976); *In re Paulson's Estate*, 219 N.W.2d 132, 134 (N.D. 1974); *In re Kaspari's Estate*, 71 N.W.2d 558, 567 (N.D.1955); *Zeman v. Mikolasek*, 75 N.D. 41, 53, 25 N.W.2d 272, 279 (1946)). Thus, although we conclude Mesling had authority to transfer the real estate without consideration to the Stechers under the power of attorney, "that authority must [still] be construed together with other statutes regarding obligations of an attorney-in-fact and trustee." *Makedonsky*, ¶ 12 (citing *In re Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842).

[¶ 26]   Mesling received the power of attorney for Carolyn Vizenor, which under North Dakota law entails a confidential relationship and imposes fiduciary responsibilities on Mesling. *See Roberts*, 2005 ND 50, ¶ 12, 692 N.W.2d 922. "When a confidential relationship or fiduciary duty exists, the person in whom the confidence is reposed is deemed to be a trustee." *Id.* "All transactions between a trustee and a beneficiary, including gifts, are presumed to be without sufficient con-

sideration and under undue influence. N.D.C.C. § 59–01–16. *See* 2007 N.D. Sess. Laws ch. 549, § 27 (repealing N.D.C.C. ch. 59–01 and adopting Uniform Trust Code)." *Màkedonsky*, 2008 ND 49, ¶ 12, 746 N.W.2d 185. Nonetheless, under N.D.R.Ev. 301, "a presumption substitutes for evidence of the presumed fact [only] until the trier of fact finds from credible evidence that the presumed fact does not exist." *Roberts*, at ¶ 13.

[¶ 27] Here, concluding Mesling's transfer of the property was valid, the district court found by weight of the evidence Carolyn Vizenor's directive to Mesling was complied with and Carolyn Vizenor was competent. The court specifically found no credible evidence that the Stechers exerted any influence, undue or otherwise, on Carolyn Vizenor; no evidence that the Stechers knew Mesling transferred the land to Carolyn Vizenor in February 2005; and evidence that Carolyn Vizenor was competent when she gave her power of attorney to Mesling in November 2005. The court also held that no legal duty, confidential or otherwise, existed between the Stechers and Carolyn Vizenor that could have been breached and that Carolyn Vizenor authorized the gift to the Stechers. Even if the district court erred in concluding no confidential relationship or fiduciary duties existed, we conclude the Stechers provided sufficient credible evidence permitting the trier of fact to rebut the presumption and find no undue influence in the transaction existed. Based on the record, the court's findings had evidentiary support.

[¶ 28] Although Mesling testified, through a deposition admitted at trial, that Carolyn Vizenor had not told her Carolyn Vizenor wanted to gift the land to the Stechers, the district court could find her testimony was not credible. Additionally, the attorney who drafted the deeds for Mesling in February 2005 and the November 28, 2006 deed at issue testified that when Mesling came to see him on November 28 with the Stechers, Mesling was competent and clear about what she wished to accomplish. The attorney also testified that when Mesling conveyed interests in property to Carolyn Vizenor, Carolyn Vizenor specifically told him she did not want her husband's relatives, the Vizenors, to get the property when she died. The attorney further testified that when Mesling executed the deeds on November 28, 2006, she advised him that she was doing what Carolyn Vizenor wanted her to do and that Carolyn Vizenor did not want the property going to Leonard Vizenor's heirs.

[¶ 29] Another witness, Lynette Jacobs, testified that on several occasions during the last few months of her life, Carolyn Vizenor told Jacobs in Mesling's presence that she wanted the Stechers to have her interest in the farmland. Jacobs also testified Carolyn Vizenor specifically expressed her desire that her property not go to relatives with whom she had no relationship. Jacobs further testified she believed Carolyn Vizenor was competent when she expressed that desire.

[¶ 30] In a bench trial, "we [will] not second-guess the [district] court on its credibility determinations." *See Brash*, 2013 ND 156, ¶ 7, 835 N.W.2d 798 (citation omitted). On this record, we conclude evidence supports the court's findings, and we are not left with a definite and firm conviction that a mistake has been made. We also hold the court did not abuse its discretion in denying the Vizenors' post-trial motions under N.D.R.Civ.P. 52(b) and N.D.R.Civ.P. 59.

IV

[¶ 31] We have considered the remaining issues and arguments and find they are

either unnecessary to our decision or without merit. The district court judgment and orders are affirmed.

[¶ 32] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

[¶ 33] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.