2015 ND 147

In the Matter of the ESTATE OF Ralph BARTELSON, deceased.

Jean Valer and Jane Haught, Petitioners and Appellees

v.

Neil Bartelson, Steven M. Fischer, Personal Representative of the Estate of Diane Fischer and Guardian and Protective Services, Personal Representative, Respondents.

Neil Bartelson, Appellant.

No. 20140244.

Supreme Court of North Dakota.

June 11, 2015.

William C. Severin, Bismarck, N.D., for petitioners and appellees.

Clark J. Bormann (argued) and Sophie Y. Morgan (appeared), Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶1] Neil Bartelson appeals from an order denying his petition to remove Guardian and Protective Services ("GAPS") as personal representative of Ralph Bartelson's estate and to appoint him as successor personal representative. Because the district court failed to apply the presumption of undue influence and incorrectly presumed there can be no undue influence if the principal is lucid, we reverse and remand.

I

[¶2] This is the third time this case has been before us. The facts of this case have been explained in detail in *Estate of Bartelson*, 2011 ND 219, 806 N.W.2d 199 ("*Bartelson I*"), and *Estate of Bartelson*, 2013 ND 129, 833 N.W.2d 522 ("*Bartelson II*"), and will be repeated as necessary to explain the resolution of the issues in this appeal.

[¶3] Ralph Bartelson had four children: Neil Bartelson, Diane Fischer, Jean Valer, and Jane Haught. Because of Ralph Bartelson's declining health, the children agreed Ralph Bartelson would reside with Valer and she and Haught would receive compensation for the care they provided. While living under the care of Valer, Ralph Bartelson gave her a power of attorney and established a joint checking account, naming both Valer and Haught co-owners with rights of survivorship and allowing them to issue checks from the account. Alleging Valer and Haught had misappropriated funds, Neil Bartelson and Fischer petitioned for the appointment of Neil Bartelson as Ralph Bartelson's guardian and conservator. In July 2008, the parties stipulated that Valer would act as guardian with limitations and GAPS would be appointed conservator and be responsible for investigating the alleged misappropriation of funds. This stipulation provided:

[T]he conservator ... will be empowered to investigate and pursue any inappropriate expenditures from the ward's funds if the conservator deems it appropriate so to do.... [T]ransfers Ralph made to Jean Valer, Jane Haught and Diane Fischer in December of 2007 of $12,000 and in January of 2008 of $60,000 will not be contested but all other transfers are subject to review by the conservator.

[¶ 4] Upon Ralph Bartelson's death in August 2008, the district court granted Valer's and Haught's request that Ralph Bartelson's will be admitted to informal probate, and the court appointed Valer and Haught as co-personal representatives of the estate. In February 2009, Neil Bartelson and Fischer petitioned for formal probate of Ralph Bartelson's will and requested the appointment of a different personal representative. Prior to the hearing on the petition, Neil Bartelson, Fischer, Valer, and Haught stipulated to admitting Ralph Bartelson's will to formal probate and to appointing GAPS as successor personal representative. The district court then ordered formal probate for Ralph Bartelson's will and appointed GAPS as personal representative of his estate.

[¶ 5] In July 2009, GAPS moved for court approval of compensation to Valer and Haught for the expenses they incurred while serving as personal representatives of Ralph Bartelson's estate. Neil Bartelson and Fischer objected to the expenditure requests and reasserted their allegation that Valer and Haught had misappropriated estate funds prior to GAPS' appointment as personal representative. In March 2010, the parties stipulated to payment of the expenditures requested by GAPS, but conditioned the payments upon the parties reaching a settlement or abiding by a court judgment on the issue of misappropriation of funds. As part of the stipulation, the parties agreed to fully cooperate with GAPS in preparation of an inventory and accounting of assets, income, withdrawals, and deposits and to allow GAPS to employ a forensic accountant to analyze the misappropriation claims. The stipulation stated:

4. Before any payment is made from the assets of the Estate to any heir, the parties will either

a. reach a settlement agreement pertaining to the claims identified in Paragraph 5 below or

b. abide by a final Judgment of the Trial Court determining the merits of the claims identified in Paragraph 5 below if settlement cannot be reached. The amounts awarded to the Estate in either the settlement agreement or Judgment of the Trial Court, as the case may be, shall then be used as an offset against any amounts to be distributed to any heir.

5. Claims include the following (from January 1, 2005 to the present):

a. Funds paid or withdrawn from Ralph Bartelson's accounts or assets which exceeded agreed-upon or reasonable care-giving or expense reimbursement;

b. Accounting of property owned by Ralph Bartelson, such as the van, lift, mule and/or four-wheeler, hospital bed, gold fob, billfold, watch, tractors, trailers, farm machinery and equipment, property sold at auction and the proceeds received, etc.

c. Rent, royalties and income owed to Ralph on land sold and/or conveyed in which he reserved life estates; and

d. Loans made by Ralph to family members.

[¶ 6] In accordance with the parties' stipulation, GAPS employed the services of Terry Daffinrud, a forensic CPA, to review transfers of Ralph Bartelson's assets to his family members occurring between 2002 and GAPS' appointment as personal representative. Daffinrud determined that between 2003 and Ralph Bartelson's death in 2008, Valer received funds in excess of $154,000.00 and Haught received funds in excess of $133,000.00. Although Daffinrud was able to provide a summary of the funds expended from Ralph Bartelson's estate, he was unable to determine the rea-

son for and appropriateness of each transfer, because Valer and Haught failed to provide the requested documentation. Because he was provided "virtually nothing" in terms of the documentation he requested from Valer and Haught, Daffinrud testified he was unable to determine whether the loans, gifts, cash withdrawals, and payments for care made to or by Valer and Haught were appropriate or reasonable. Despite Daffinrud's suspicion and uncertainty regarding the substantial amounts of money expended from Ralph Bartelson's checking account by Valer and Haught, GAPS did not pursue a misappropriation claim against Valer and Haught. Instead, GAPS claimed, without a finding of wrongdoing or misconduct, it had "done all that was possible" to investigate Valer and Haught's alleged misappropriation of Ralph Bartelson's funds and would await further direction from the district court.

[¶ 7] The parties remained unable to reach a settlement in regard to the misappropriation allegations, and as a result a bench trial was held. Neil Bartelson and Fischer argued that because Valer and Haught owed a fiduciary duty to Ralph Bartelson, the district court was required to apply the presumption of undue influence set forth in N.D.C.C. § 59–18–01.1 in determining whether they had misappropriated funds from Ralph Bartelson's checking account. Under this presumption, Neil Bartelson and Fischer claimed Valer and Haught were required to account for all withdrawals and transactions they made while acting as fiduciaries of Ralph Bartelson. Following trial, the district court entered an order disclaiming jurisdiction over the misappropriation that allegedly occurred prior to Ralph Bartelson's death. Neil Bartelson and Fischer appealed, and in *Bartelson I,* 2011 ND 219, ¶ 13, 806 N.W.2d 199, this Court held the misappropriation claims fell within the district court's jurisdiction. As a result, we reversed and remanded for further proceedings and for the court to determine whether Neil Bartelson and the Estate of Fischer[1] ("Fischer") had standing to assert their misappropriation claims when they did not allege that GAPS breached its fiduciary duty by failing to pursue misappropriation claims against Valer and Haught. *Id.* at ¶ 15.

[¶ 8] On remand, Neil Bartelson and Fischer argued they had standing to bring a misappropriation claim against Valer and Haught and the district court was required to apply the presumption of undue influence under N.D.C.C. § 59–18–01.1 to any withdrawals made by Valer and Haught as fiduciaries of Ralph Bartelson. Neil Bartelson and Fischer argued that because Valer and Haught failed to rebut the presumption of undue influence by providing an accurate accounting of the withdrawals they made from Ralph Bartelson's checking account, any unaccounted-for withdrawals were presumed to have been made under undue influence. The district court, however, held Neil Bartelson and Fischer did not have independent standing to assert misappropriation claims against Valer and Haught when they did not allege that GAPS breached its fiduciary duty by failing to pursue such claims against Valer and Haught. After unsuccessfully petitioning for reconsideration, Neil Bartelson then petitioned to remove GAPS as personal representative and to be appointed as successor personal representative, arguing GAPS breached its fiduciary duty by failing to pursue the collection of assets belonging to the estate and by failing to

1. Because Diane Fischer died while the appeal was pending, her Estate was substituted as a party.

bring an action against Valer and Haught for misappropriation. The district court denied the petition, holding Neil Bartelson was not an interested person and therefore lacked standing to petition for removal of the personal representative. The court also stated it had previously determined GAPS was qualified to act as the personal representative and competently performed its responsibilities.

[¶ 9] Neil Bartelson and Fischer moved, under Rule 60(b), N.D.R.Civ.P., to vacate the order denying their petition to remove GAPS as personal representative. They argued they were interested persons who had standing to seek removal of the personal representative, the court had not previously determined whether GAPS had breached its fiduciary duties or other responsibilities, and the court abused its discretion when it determined their petition was frivolous. After a hearing on the motion, the district court held the issues had been fully addressed by the court in previous orders and determined Neil Bartelson, who was lawfully excluded from the estate, and Fischer did not have an interest in the estate. Neil Bartelson and Fischer appealed, and this Court reversed, holding the district court erred as a matter of law in concluding they were not interested persons and abused its discretion by denying their petition without holding a hearing. See Bartelson II, 2013 ND 129, ¶¶ 17, 21, 833 N.W.2d 522.

[¶ 10] At the hearing on remand, Neil Bartelson and Fischer once again argued the district court was required to rule on the alleged misappropriation claims and must do so by applying the presumption of undue influence set forth in N.D.C.C. § 59-18-01.1 to determine whether Valer and Haught had misappropriated funds from Ralph Bartelson's checking account. In their post-hearing brief, Neil Bartelson and Fischer argued that because Valer and Haught failed to rebut the presumption of undue influence by providing an accurate accounting of the withdrawals they made from Ralph Bartelson's checking account, any unaccounted-for withdrawals were presumed to have been made under undue influence. Without applying the presumption of undue influence, the district court entered an order denying Neil Bartelson's petition to remove GAPS as personal representative. Although the district court found no basis for the misappropriation claims, the court identified numerous unaccounted-for withdrawals made by Valer and Haught and ordered GAPS to subtract those amounts from future disbursements to them. Neil Bartelson appeals from the district court's order.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 30.1–02–02. The appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 12] On appeal, Neil Bartelson argues the district court abused its discretion in denying his petition to remove the personal representative of Ralph Bartelson's estate. He contends the district court abused its discretion by determining no basis for misappropriation existed before the institution of protective proceedings and failing to address GAPS' breach of the parties' settlement agreement, stipulation, and trial court's orders, and erred in finding his misappropriation claims were based upon action occurring after the guardianship and conservatorship had been filed. Underlying this appeal, however, is the question of whether the district court correctly applied the law when it determined there was no basis for Neil Bartelson's claims of misappropriation against Valer and Haught. Because Neil

Bartelson's issues on appeal are predicated on the question of whether the district court properly applied the law in reaching its decision regarding the alleged misappropriation of funds by Valer and Haught, the district court must answer this question by properly interpreting and applying the law regarding the presumption of undue influence under N.D.C.C. § 59–18–01.1.

[¶ 13] After this Court held in *Bartelson II*, 2013 ND 129, ¶¶ 17, 21, 833 N.W.2d 522, that Neil Bartelson and Fischer did indeed have standing to petition for the removal of the personal representative of Ralph Bartelson's estate, the district court held a hearing on Neil Bartelson's petition to remove GAPS as personal representative of Ralph Bartelson's estate. At the hearing, Neil Bartelson argued GAPS should be removed as personal representative for breaching its duties as personal representative, intentionally disobeying a court order, and showing bias in favor of Valer and Haught. In addition, Neil Bartelson once again raised the issue of the applicability of the presumption of undue influence set forth in N.D.C.C. § 59–18–01.1, arguing that because the district court failed to previously rule on the alleged misappropriation by Valer and Haught, the court was required to do so by applying the presumption of undue influence to all withdrawals they made in their capacities as fiduciaries of Ralph Bartelson. To that end, Neil Bartelson asserted that because Daffinrud's forensic audit identified numerous unaccounted-for withdrawals that had been made from Ralph Bartelson's checking account by Valer and Haught, Valer and Haught were required to prove the withdrawals were made absent any undue influence. Although they offered testimony suggesting that Ralph Bartelson was a generous man who consented to all their withdrawals and spending, Neil Bartelson argued Valer and

Haught failed to provide evidence sufficient to rebut the presumption of undue influence. Because Valer and Haught failed to successfully rebut the presumption and their withdrawals were presumed to have been made under undue influence, Neil Bartelson claimed GAPS was obligated to pursue misappropriation claims against Valer and Haught. On the basis of its failure to have pursued such claims, Neil Bartelson argued GAPS had breached its fiduciary duties to Ralph Bartelson's estate and removal of GAPS as personal representative was justified.

[¶ 14] After the hearing, the district court entered its order dismissing Neil Bartelson's petition to remove GAPS as personal representative, stating:

> With the understanding that Ralph Bartelson remained lucid up to July 2008, this Court sees no basis for a claim of misappropriation prior to that date. Additionally, this Court can find no claim for unauthorized disbursements during the abbreviated conservatorship by [GAPS] from July 2008 [to] October 2008. The thrust of Neil's argument is embedded in payments occurring during these time periods. For the payments occurring after October 2008, this Court will take action and direct [GAPS] to act according to this Court's order. This Court will not, however, remove [GAPS] as personal representative. We certainly will not disregard the wishes of the deceased, and appoint a man who was excluded from the deceased's will to a position where he can control those funds which he was intentionally deprived.

> Neil argues that [GAPS] failed to gather the documents necessary for a complete accounting of the estate. As set forth below, *the accountant hired by [GAPS] to perform the financial review of the Estate made several requests for the*

*necessary documents but was unable to obtain them.* This is due to no fault of ·[GAPS] and [GAPS] will not be reprimanded. Finally, Neil has not shown a bias for Jean and Jane. [GAPS] will not be removed as personal representative. (Emphasis added.) The district court cited, and we can find no authority for, the presumption that lucidity precludes undue influence. The court did find Valer and Haught had been double-reimbursed for items they claimed were purchased for Ralph Bartelson, and ordered GAPS to subtract these amounts from any future disbursements to them.

■ [¶ 15] Although we have repeatedly recognized the deference granted to a district court's discretion on whether to remove a personal representative of an estate, this deference is strictly conditioned on the district court's proper application and interpretation of the applicable law in reaching its ultimate decision. *Estate of Shubert,* 2013 ND 215, ¶ 27, 839 N.W.2d 811 ("A decision on a petition to remove a personal representative lies within the discretion of the district court."); *Estate of Cashmore,* 2010 ND 159, ¶ 21, 787 N.W.2d 261 ("A district court abuses its discretion . . . when it misinterprets or misapplies the law."); *see also Estate of Wicklund,* 2014 ND 64, ¶ 16, 844 N.W.2d 565; *Estate of Huston,* 2014 ND 29, ¶ 13, 843 N.W.2d 3. In the present case, in reaching its decision to deny Neil Bartelson's petition to remove the personal representative, the district court appears to have failed to correctly interpret and apply the statutory presumption of undue influence ·in regard to the alleged misappropriation of funds from Ralph Bartelson's checking account prior to the initiation of protective proceedings in July 2008.

■ [¶ 16] Under North Dakota law, a presumption of undue influence must be applied to any transaction between a trus-

tee and the trustee's beneficiary in which the trustee gains an advantage. *Estate of Robinson,* 2000 ND 90, ¶ 9, 609 N.W.2d 745. Section 59–18–01.1, N.D.C.C., provides:

A transaction between a trustee and the trust's beneficiary during the existence of the trust or while the influence acquired by the trustee remains by which the trustee obtains any advantage from the trust's beneficiary is presumed to be entered by the trust's beneficiary without sufficient consideration and under undue influence. This presumption is a rebuttable presumption.

This presumption applies not only to transactions involving trustees, agents, and attorneys-in-fact, but also to all transactions involving confidential relationships. *Estate of Vizenor,* 2014 ND 143, ¶¶ 26–27, 851 N.W.2d 119 (presumption applied to prop-· erty transfers made by attorney-in-fact); *Allard v. Johnson,* 2006 ND 243, ¶ 6, 724 N.W.2d 331 (presumption applied to unauthorized withdrawals by agent); *Estate of Wenzel–Mosset,* 1998 ND 16, ¶¶ 24–25, 575 N.W.2d 425 (presumption of undue influence applied to transactions entered into by caregiver). In *Estate of Dinnetz,* 532 N.W.2d 672 (N.D.1995), we defined a confidential relationship:

A confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another, and that such relationship is a fact to be established in the same manner and by the same kind of evidence as any other fact is proven.

*Id.* at 674 (quoting *Estate of Zins,* 420 N.W.2d 729, 731 (N.D.1988)). A person who voluntarily assumes a confidential relationship becomes a trustee, and any transaction the trustee enters into with the trustee's beneficiary by which the trustee gains an advantage is presumed to be made under undue influence. *Estate of*

*Zins*, 420 N.W.2d at 731. "If a party establishes sufficient facts to give rise to the presumption, the burden then shifts to the other party to prove 'that the nonexistence of the presumed fact is more probable than its existence.'" *Id.* (quoting N.D.R.Ev. 301); *see Estate of Robinson*, 2000 ND 90, ¶ 9, 609 N.W.2d 745.

[¶ 17] In the present case, the record reflects that in reaching its decision regarding the petition to remove the personal representative of Ralph Bartelson's estate, the district court abused its discretion by failing to properly apply the presumption of undue influence to the withdrawals made from Ralph Bartelson's checking account and by incorrectly presuming there can be no undue influence if the principal is lucid. To properly apply the presumption of undue influence, the district court must determine whether Valer and Haught assumed confidential relationships with Ralph Bartelson and would be subject to the effects of the presumption.

[¶ 18] Although the district court failed to find Valer and Haught assumed confidential relationships with Ralph Bartelson, a finding usually reserved for the district court, the record clearly establishes that because Valer had been Ralph Bartelson's agent under a durable power of attorney since 2007, she assumed "a confidential relationship and fiduciary responsibilities to [him]." *Allard v. Johnson*, 2006 ND 243, ¶ 6, 724 N.W.2d 331; *see Filler v. City of Minot*, 281 N.W.2d 237, 242 (N.D.1979) ("Only when reasonable minds cannot differ on ... findings of fact do they become conclusions of law for the court to decide."). In regard to Haught, on remand, the district court must determine whether she assumed a confidential relationship with Ralph Bartelson after being entrusted to withdraw funds from his account on his behalf and assist him with his personal needs. *See*

*generally Figgins v. Cochrane*, 403 Md. 392, 942 A.2d 736, 746 (2008) ("[W]hen a parent on account of old age and infirmity relies heavily upon the child for care and protection or for guidance in business affairs, then there exists a confidential relationship."); *Estate of Dinnetz*, 532 N.W.2d 672, 674–75 (N.D.1995) (Name placed on account with right of survivorship reflected advantage gained from a confidential relationship.); *Black v. Peterson*, 442 N.W.2d 426, 429 (N.D.1989) ("A confidential relation is particularly likely to exist where there is a family relationship."). If the district court finds a confidential relationship, it must apply the presumption of undue influence to all benefits Haught gained on account of the relationship.

[¶ 19] While the district court must make a finding on whether Haught assumed a confidential relationship with Ralph Bartelson, the record establishes that Valer assumed such a relationship as a matter of law. Because she assumed a confidential relationship and subsequently made numerous withdrawals from Ralph Bartelson's checking account, the district court is required by N.D.C.C. § 59–18–01.1 to apply the presumption of undue influence to these transactions since Neil Bartelson provided evidence of Valer's unaccounted-for withdrawals. *Allard*, 2006 ND 243, ¶ 6, 724 N.W.2d 331. Although Valer argued a failure to keep perfect, concise records does not evidence wrongdoing, as a fiduciary of Ralph Bartelson's, Valer assumed the burden of developing a record sufficient to prove any benefits were not received without sufficient consideration or under undue influence. *Mehus v. Mehus*, 278 N.W.2d 625, 634 (N.D.1979) ("If [a fiduciary] is to receive the benefits from a good faith transaction with [the] principal or beneficiary, [the fiduciary] must also assume the burden of developing a record sufficient to

satisfy the requirements of law. If [the fiduciary] fails to meet that burden, ... [the fiduciary] suffers the risk of losing the benefits of the transaction."). Here Daffinrud's forensic accounting report, which was before GAPS and the district court, established that evidence was lacking to rebut the presumption that the benefits were bestowed upon Valer without sufficient consideration and under undue influence. Regardless of Ralph Bartelson's mental state, it cannot be said the mandate of N.D.C.C. § 59–18–01.1 has been satisfied without credible evidence rebutting the presumption of undue influence. *See Estates of Vizenor and Vizenor v. Mesling,* 2014 ND 143, ¶ 26, 851 N.W.2d 119 ("[U]nder N.D.R.Ev. 301, a presumption substitutes for evidence of the presumed fact only until the trier of fact finds from credible evidence that the presumed fact does not exist.") (internal quotation marks and citations omitted). Therefore, we remand the district court's order and instruct the court to consider the petition to remove GAPS as personal representative by properly interpreting and applying the law regarding the presumption of undue influence under N.D.C.C. § 59–18–01.1.

### III

[¶ 20] We note that because the judge presiding over the original proceedings has retired, the district court must "make a Rule 63, N.D.R.Civ.P., certification prior to conducting further proceedings or, alternatively, order a new trial." *Smestad v. Harris,* 2011 ND 91, ¶ 15, 796 N.W.2d 662 (citation omitted). Rule 63, N.D.R.Civ.P., requires:

> If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must,

at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

### IV

[¶ 21] We reverse and remand for further proceedings consistent with this opinion.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.