# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 220

In Re: The William C. Hansen and Verna Hansen Trust, Dated December 15, 1997

Bravera Wealth,                                                                        Petitioner

    v.

Catherine Hansen Dietemann
and Lauren Dietemann,      Respondents, Appellants, and Cross-Appellees
    and

William Anthony Hansen,      Respondent, Appellee, and Cross-Appellant

### No. 20250206

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Rhonda R. Ehlis, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Chief Justice.

Robert G. Manly (argued) and Jack M. Buck (appeared), Fargo, ND, for respondents, appellants, and cross-appellees.

Samuel G. Larson, Bismarck, ND, for respondent, appellee, and cross-appellant.

**Jensen, Chief Justice.**

[¶1]  Catherine Hansen Dietemann and Lauren Dietemann appeal from a summary judgment declaring beneficiary rights under a trust. William Anthony ("Tony") Hansen cross appeals. We hold the amendments to the trust executed by the agent acting under a power of attorney are invalid. We reverse the judgment and remand for a declaration of beneficiary rights according to the original trust terms.

I

[¶2]  William C. Hansen and Verna Hansen married and had two children, William Anthony Hansen, and Catherine Hansen Dietemann. William Anthony Hansen had a son with the same name, who goes by "Tony" Hansen. Catherine Hansen Dietemann has a daughter, Lauren Dietemann. The Dietemanns are on one side of this dispute, and Tony Hansen is on the other.

[¶3]  In December 1997, William C. Hansen and Verna Hansen executed the "Revocable Trust Agreement of William C. Hansen and Verna Hansen." The trust agreement instructed the trustee to hold separate shares for the benefit of each of them. Upon William C. Hansen's death, the trust agreement required a portion of his separate share to be held according to a paragraph titled "Residuary Trust." The trust agreement contained distribution instructions for the residuary after Verna Hansen's death.

[¶4]  The trust agreement also contained a provision titled "Revocable Trust." It states each settlor "expressly reserves the right to amend or revoke this instrument at any time as it relates to and pertains to their respective separate trust" and each also "expressly waives" those rights as to "the Trust as established or created" by the other. The provision also states: "It is the express intent of [each] that neither one of them shall have any control or power of any kind or nature" over the other's "separate share or trust fund[.]"

[¶5]   On the same day the trust agreement was executed, William C. Hansen signed a durable power of attorney listing Verna Hansen as his attorney in fact. The power of attorney contains various authorizations, including the power to manage bank accounts, to make gifts, to transfer property into trusts, and the following "miscellaneous" authorization:

> To transact all and every kind of business of whatsoever kind or nature and generally to do and perform all things, and make, execute and acknowledge all contracts, orders, deeds, writings, assurances and instruments which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me and generally to act for me in all matters affecting any business or property which I may now or in the future have with the same force and effect and to all intents and purposes as though I were personally present and acting for myself . . . .

[¶6]   Verna Hansen, acting as William C. Hansen's attorney in fact, amended the trust agreement in April 1998 and January 1999. The amendments changed the instructions for distribution upon her death. William C. Hansen died in February 1999; William A. Hansen died in 2017; and Verna A. Hansen died in 2019. In 2024, Bravera Wealth, as trustee, filed a petition for an order declaring the rights of the beneficiaries.

[¶7]   The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of Tony Hansen. The court found the amendments to the trust agreement were valid. The court acknowledged N.D.C.C. § 59-14-02 requires express authorization for an agent acting under a power of attorney to amend the trust, but the court held the statute was not applicable because it was not in existence at the time the trust agreement was executed. The court explained, "the language of the Power of Attorney was sufficient to grant Verna [Hansen] the authority to amend the Trust Agreement, specifically by way of the Miscellaneous section of the Power of Attorney document." Based on the amended trust language, the court also decided an antilapse provision in N.D.C.C. § 30.1-09.1-07 applied to William A. Hansen's beneficiary interest.

2

[¶8]   The district court entered judgment, under the terms of the amended trust agreement, declaring that Tony Hansen is entitled to receive 50% of the remaining principal and undistributed income (comprised of both his 25% share and a 25% share attributable to application of the antilapse statute) and that Catherine Hansen Dietemann and Lauren Dietemann are each entitled to receive a 25% share. The Dietemanns appeal. They argue the court misinterpreted the amendments to require application of the antilapse statute. Tony Hansen cross appeals. He argues the amendments are invalid.

II

[¶9]   Tony Hansen argues the amendments are invalid because the power of attorney was insufficient to give Verna Hansen authority to amend the trust. He asserts distribution must occur according to the original trust provisions.

[¶10]  A power of attorney is a written instrument authorizing a person to act as another's agent. *Durr v. Volden*, 2024 ND 149, ¶ 12, 10 N.W.3d 133. A power of attorney creates an agency relationship. *In re Estate of Vizenor*, 2014 ND 143, ¶ 10, 851 N.W.2d 119. Agency relationships involve contract and fiduciary principles. *Alerus Fin., N.A. v. W. State Bank*, 2008 ND 104, ¶ 20, 750 N.W.2d 412. Determining the extent of an agent's authority under a power of attorney is governed by the rules for construing contracts, except when the fiduciary relationship requires a different rule. *Id.* Ascertaining the meaning of words in a trust agreement is also governed by principles of contract interpretation. *In re Michael J. Tharaldson Irrevocable Trust II*, 2023 ND 2, ¶ 6, 984 N.W.2d 375. This Court's primary objective is to determine the settlor's intent. *Langer v. Pender*, 2009 ND 51, ¶ 13, 764 N.W.2d 159. "When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document itself." *Hecker v. Stark Cnty. Soc. Serv. Bd.*, 527 N.W.2d 226, 230 (N.D. 1984).

[¶11] The North Dakota Uniform Trust Code, N.D.C.C. ch. 59-09 to 59-19, governs trusts. Interpretation and application of these statutes presents a question of law that is fully reviewable on appeal. *In re Matthew Larson Tr. Agreement*, 2013 ND 85, ¶ 9, 831 N.W.2d 388. We apply the following rules of statutory interpretation:

Our primary objective in interpreting a statute is to determine the legislation's intent, as expressed in the statutory language. We give words their plain, ordinary, and commonly understood meaning, unless they are specifically defined or contrary intention plainly appears. We construe statutes as a whole, harmonize them to give meaning to related provisions, and interpret them to give effect to all of their provisions. When a uniform statute is interpreted, we construe it to effectuate its general purpose to make the law uniform in the states which enacted it.

*Fahey v. Cook*, 2024 ND 138, ¶ 22, 9 N.W.3d 668 (citations omitted).

A

[¶12] Tony Hansen argues the district court erred when it decided N.D.C.C. § 59-14-02 does not apply in this case. It governs whether an agent acting under a power of attorney has authority to amend a trust, stating:

A settlor's powers with respect to revocation, amendment, or distribution of trust property may be exercised by an agent under a power of attorney only to the extent expressly authorized by the terms of the trust or the power, exercised in writing and delivered to the trustee.

N.D.C.C. § 59-14-02(5).

[¶13] The district court held the N.D.C.C. § 59-14-02(5) express authorization requirement does not apply because it was not in effect when the trust was executed. However, unless another law provides otherwise, chapter 59-14 applies "to all judicial proceedings concerning trusts which are commenced after July 31, 2007." N.D.C.C. § 59-19-02(1)(b); *see also* N.D.C.C. § 59-19-02(2) (providing different applicability rules for the period between August 1, 2007, and July 31, 2009); *In re Rose Henderson Peterson Min. Tr.*, 2022 ND 92, ¶ 18, 974 N.W.2d 372 (noting the July 31, 2007 effective date applies to a provision in chapter 59-18); *Warne v. Warne*, 275 P.3d 238, 245-49 (Utah 2012) (deciding Utah's equivalent to N.D.C.C. ch. 59-14 applied retroactively in dispute about partial revocation of a trust). Because this judicial proceeding was commenced after July

4

31, 2007, absent a law providing otherwise, the express authorization requirement applies.

[¶14] The Dietemanns argue N.D.C.C. § 59-14-02(1) provides otherwise. It states: "Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust. *This subsection does not apply to a trust created under an instrument executed before August 1, 2007.*" (Emphasis added.) We are not persuaded. Subsection one is not relevant because the parties agree the trust in this case was revocable at the time it was amended. The applicability date in subsection one does not apply to subsection five; N.D.C.C. § 59-19-02 instead governs. *See* Uniform Trust Code § 1106 (providing a comment describing the date in subsection one as "an additional effective date provision" relating to whether a trust "is presumed to be revocable or irrevocable"). We hold the district court erred as a matter of law by not applying the N.D.C.C. § 59-14-02(5) express authorization requirement when deciding whether the amendments are valid.

B

[¶15] Tony Hansen asserts there is nothing in the trust agreement that could be read to give agents prior express authorization to amend it. We agree. The only language in the trust concerning amendments is prohibitory. The trust specifically states Verna Hansen waived the right "to amend or revoke the Trust" created by William C. Hansen, and she has no "control or power of any kind or nature" over it. Paragraph five states in relevant part:

> REVOCABLE TRUST: Each of the Settlors expressly reserves the right to amend or revoke this instrument at any time as it relates to and pertains to their respective separate trust. Each of the Settlors, however, expressly waives the right at any time or times to amend or revoke the Trust as established or created hereunder by the other Settlor. It is the express intent of William C. Hansen and Verna Hansen that neither one of them shall have any control or power of any kind or nature over the separate share or trust fund that each has established hereunder for their own separate respective benefit.

5

The trust does not contain any other provisions relating to amendments or agents acting under a power of attorney.

[¶16] The Dietemanns assert that even if the trust does not provide authority, the amendments are valid because the power of attorney grants "the explicit power to transfer any part of [William C. Hansen's] property to his trust, to make gifts of cash or property, and to broadly transact all and every kind of business." They claim these powers, taken together, are sufficient to give Verna Hansen authority to amend the trust. We are not convinced these general provisions satisfy the N.D.C.C. § 59-14-02(5) express authorization requirement. The word "express" means: "Clearly and unmistakably communicated; stated with directness and clarity." *Express*, Black's Law Dictionary 726 (11th ed. 2019). Although the power of attorney gave Verna Hansen broad authority, it does not specifically indicate she had authorization to amend the trust. The Dietemanns' assertion that her authority can be implied from general provisions is not sufficient. Absent an express written authorization, the amendments are invalid under N.D.C.C. § 59-14-02(5).

### III

[¶17] The district court erred when it found that the trust amendments are valid and it is therefore not necessary to address whether the court misinterpreted the amended language with regard to the antilapse statute. The judgment is reversed and the case is remanded for a declaration of beneficiary rights according to the original trust terms.

[¶18] Jon J. Jensen, C.J.
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte
    Douglas A. Bahr

6